68 U.S. 486
 17 L.Ed. 688
 1 Wall. 486
 HOMER
v.
THE COLLECTOR.
 December Term, 1863
 
 ERROR to the Circuit Court for the District of Massachusetts, the case being thus:
 The Tariff Act of 1857, which was an act reducing duties, provided by its first section, that in lieu of the duties then existing, there should be imposed upon the articles in schedule B of the Tariff Act of 1846, a duty of 30 p. c.; and upon those in schedules C, E, and G, of said act, the duties of 24, 15, and 8 p. c. respectively, 'with such exceptions as are hereinafter made.'
 The Tariff Act of 1846 had imposed a duty of 40 p. c. upon the articles enumerated in schedule B, among which were 'almonds' (by name), 'currants,' 'dates,' 'figs,' 'prunes,' 'raisins.' It had imposed a duty of 30 p. c. upon those enumerated in schedule C, among which articles were 'grapes,' 'nuts, not otherwise provided for,' 'plums;' and a duty of 20 p. c. upon those enumerated in schedule E, including 'bananas,' 'cocoa-nuts,' 'fruit, green or ripe, not otherwise provided for,' 'oranges,' 'lemons and limes,' 'pineapples.'
 By this first section, therefore, of the Tariff Act of 1857, the duties on almonds, currants, dates, figs, prunes, and raisins, were reduced from 40 to 30 p. c.; grapes, plums, 'nuts not otherwise provided for,' to 24 p. c.; bananas, oranges, lemons, &c., and 'fruit, green or ripe, not otherwise provided for,' in the statute of 1846, to 15 p. c.; unless these articles or any of them should come under the 'exceptions' afterwards made. The second section of the act of 1857 did make exceptions in favor of various articles, among them 'fruit, green, ripe, or dried,' which it enacted should be transferred to schedule G; thus making them liable to a duty of 8 p. c. No particular fruits were named in this section.
 Tariff acts, prior to that of 1846—that is to say, the tariff acts of 1804, 1816, 1832, 1842—had all laid a duty on 'almonds' by name.
 In this state of the tariff acts the plaintiff had made an importation of almonds, on which the defendant, Collector of the Port of Boston, charged 30 p. c. ad valorem. The plaintiff, considering that almonds were within the exception of 'dried fruit,' and so chargeable with but 8 p. c. ad valorem, paid the larger duty under protest, and brought suit to recover the difference. In the course of the trial the following questions were raised:
 1st. Whether by law almonds were subject to a duty of 30 p. c. or of 8 p. c. only.
 2d. Whether evidence should be admitted to prove that before and at the time of the passing of the Tariff Act of 1857, almonds were fruit, green, ripe, or dried, according to the commercial understanding of these terms in the markets of this country.
 3d. Whether it should be left to the jury to determine whether almonds were fruit, green, ripe, or dried, according to the commercial understanding of these terms in our own markets when the Tariff Act of 1857 was passed.
 A certificate of division of opinion in the judges as to these points brought the same questions here.
 Mr. Welch, for the importer: Our position is, that an exception has been made on the article of almonds in the second section of the act of 1857; and that by this section it is transferred to schedule G, under the act of 1846, which imposed a duty of but 8 p. c.; and we ask to show this by evidence that 'almonds' were 'fruit,' green, ripe, or dried, according to the commercial understanding of our markets, and so within that schedule.
 The general rule, which will be admitted, is, that Congress uses language in the revenue laws 'in its known and habitual commercial sense,' 'in that known in our own trade, foreign and domestic.' There are two qualifications to this rule. The first is, where Congress has, by its legislation, made it apparent that it did not intend to include a particular article under a name which, among commercial men, would include it. But this qualification has no application here. [The counsel here cited and commented largely on prior tariff acts to support this position.] The second is, when there is a known popular sense in which a word or phrase, designating some common article, is used accordantly with the etymology of the language and with the common understanding of all but a particular class. In those cases Congress may be presumed to use the word in that sense, and not in any peculiar commercial one. Maillard v. Lawrence,[1] where it was decided that shawls were 'wearing apparel' in the sense of the revenue laws, is an illustration. But this qualification applies no more than the first one, for the term dried fruits in popular meaning includes almonds. They are popularly classed among the dried fruits of the table with raisins, dates, &c.: they are bought as such at retail shops with the same articles of dried fruit: they are defined in dictionaries as fruits, not in the general sense alone as fruits of the earth, but in the more limited sense as being the edible fruits of trees, shrubs, or vines: they are botanically treated as fruit in books of horticulture.[2]
 It is not important that 'almonds' are mentioned by name in the old tariff acts; for in legislation, previous to 1857, neither the terms 'fruit, green, ripe, or dried,' nor any similar terms were used; but 'almonds,' like the other dried fruits of commerce, were specifically enumerated, and were placed in companionship with those other dried fruits, and subjected to the same duty with all or most of them. Moreover, the general plan of statute of 1857 shows an intention to class them under the general term with the other dried fruits. And it may be added, that the same argument which would exclude almonds would exclude raisins, and all or most of the other dried fruits.
 Mr. Bates, A. G., who submitted a brief of Mr. Woodbury, contra: The question really is, whether 'almonds' are almonds; for if they are, there is an end of the question; 'almonds' being by name charged 30 p. c. The inference from commercial nomenclature, that they have been transferred to a schedule providing for fruits, cannot operate in the face of a provision of a different kind for them by name.
 The term 'dried fruits' means such fruits as have required skill in preparation. Almonds may be 'dry' when old, as hazel-nuts are, but they have gone through no process of preparation, and are not within the class.
 The case is one of judicial construction of the revenue statutes. The proposition of leaving to the jury to determine, on evidence put before them, of a commercial understanding, whether an import, whose specific name is unquestioned, and is given specifically, bears also another name mentioned but generally, in the tariff, strikes at the roots of the judicial function of interpreting statutes. It places the construction of revenue laws at the mercy of commercial experts and unskilled juries, liable to vary in every district and at every term; and hence utterly incompetent to guide the Treasury in its obligation to require uniform duties.
 Mr. Justice NELSON, after stating the case, delivered the opinion of the court:
 
 
 1
 The argument is, that almonds are dried fruit, and hence are provided for in the second section of the act of 1857; and evidence was offered on the trial to show that such was the commercial sense of the term. But this inquiry had nothing to do with the question, and, indeed, it is difficult to see how any such inquiry could take place except as matter of curiosity and speculation; for, certainly, such proof could not exist or be found in the sense of commercial usage under any of the tariff acts, as a duty has been imposed on almonds, eo nomine, almost immemorially, at least since the duty act of 1804, and continued in the duty act of 1816, 1832, 1842, 1846. The article, as we have seen, is charged specifically with a duty of 40 p. c. ad valorem in the act of 1846, and is not named in the changes in the act of 1857. Full effect can be given to the term 'fruit,' 'dried,' without the very forced construction to bring within it the article in question. Direction to the court below that almonds are subject to duty of 30 p. c. ad valorem. The other questions certified need not be answered.
 
 
 2
 DIRECTION ACCORDINGLY.
 
 
 
 [1]
 16 Howard, 251.
 
 
 [2]
 In 'Downing on Fruit and Fruit Trees' (p. 150, &c.), the almond tree is treated of as one of the proper subjects of his book, the manner of cultivating it for fruit is pointed out, the localities in the United States where it will bear fruit are mentioned, and the various kinds are especially described. It is also stated that many naturalists, from the difficulty of distinguishing it by its leaves and wood from the peach, and from experiments in raising it from the seed, are of opinion that the peach tree and almond tree are the same, the difference between them having been produced by cultivation. See also 'Loudon's Encyclopaedia of Gardening,' § 4542. Nut-trees in general are not treated of in works on fruit-trees.