ARTHUR *v.* LAHEY.

1. The rules, that for the purpose of the tariff laws the commercial designation of an article among traders and importers, when clearly established, fixes its character, and that when Congress has designated an article by a specific name, and imposed a duty upon it, general terms in a subsequent act or a later part of the same act, although sufficiently broad to comprehend such article, are not applicable to it, are not deprived of their ordinary application by the expression "not otherwise provided for," in the eighth section of the act of June 30, 1864 (13 Stat. 210).

2. The distinctions made by importers and traders between "silk laces" and "thread laces" have been plainly recognized by Congress, and have run through its acts for more than thirty years.

3. Under the nineteenth section of the act of March 2, 1861 (12 Stat. 190), as amended by the sixth section of the act of July 14, 1862 (id. 550), thread laces are *eo nomine* subject to a duty of thirty per cent *ad valorem*.

4. *Smythe* v. *Fiske* (23 Wall. 374) was not intended to overrule *Homer* v. *The Collector* (1 id. 486), *Reiche* v. *Smythe* (13 id. 162), or the cases referred to in them, nor was *Movius* v. *Arthur* (95 U. S. 144) understood to be in conflict with it.

5. Those cases commented upon and explained.

ERROR to the Circuit Court of the United States for the Southern District of New York.

In the years 1872 and 1873, Lahey & Co. imported from France certain articles of silk manufacture, on which Arthur, the collector of the port of New York, imposed and collected a duty of sixty per cent, under the eighth section of the act of June 30, 1864. 13 Stat. 210. Among the articles so imported was a quantity of laces which the importers insisted were commer-

cially known as "thread laces," and liable to a duty of only thirty per cent *ad valorem*, under the nineteenth section of the act of March 2, 1861 (12 id. 190), as amended by the sixth section of the act of July 14, 1862 (id. 550). Having paid, under protest, the duty exacted, the importers brought this action for the excess beyond thirty per cent. The judge at the trial submitted to the jury the question, whether the articles were commercially known as " thread laces ; " and the jury having found that they were, there was a verdict for the plaintiffs. Judgment was rendered thereon, and the collector sued out a writ of error.

*Mr. Assistant-Attorney-General Smith*, for the plaintiff in error.

*Mr. Edwards Pierrepont* and *Mr. William Stanley*, contra.

MR. JUSTICE HUNT delivered the opinion of the court.

Referring to the case of *Arthur v. Morrison* (*supra*, p. 108) for a fuller explanation of the views of the court, we assume, at this point, as established, the following propositions. A citation and examination of some of the authorities are given hereafter.

1. The commercial designation of an article among traders and importers, where such designation is clearly established, fixes its character for the purpose of the tariff laws.

2. When Congress has designated an article by a specific name, and by such name imposed a duty upon it, general terms in a subsequent act, or in a later part of the same act, although sufficiently broad to comprehend such article, are not applicable to it. *Homer v. The Collector*, 1 Wall. 486 ; *Reiche v. Smythe*, 13 id. 162 ; *Smythe v. Fiske*, 23 id. 374 ; *Movius v. Arthur*, 95 U. S. 144.

The section of the act is fully set forth in the preceding case.

The government now contends that this section of the tariff act of June, 1864, was intended to embrace every article made of silk ; that the concluding clause, laying a duty of fifty per cent upon all manufactures of silk not otherwise provided for, means not otherwise provided for in this section ; and that every article of which silk was the component of chief value was intended to be covered by the section. Hence it is argued that recourse cannot be had to preceding statutes to determine

the duty payable upon lace made of silk, however it might be commercially designated.

Under the authorities to which we have referred, this view cannot be maintained. A specific designation *eo nomine* must prevail over general words, and a commercial designation is the standard by which the dutiable character of the article is fixed.

It was proved by the witnesses, and found by the jury, that, although made of silk, the laces in question were commercially known as thread laces. Whether an article is thread lace, it was shown, depended upon the mode of its manufacture, — as upon a cushion, from thread wound on bobbins moved by hand; and that it was equally thread lace whether made of cotton or silk, and whether white or black; and that there are also articles commercially known as silk laces, and articles commercially known as cotton laces; and that thread lace made of linen had been practically unknown for many years.

These distinctions are also well known and recognized in the tariff laws of the country, of which the following is an illustration. In the years mentioned, acts were passed in which the articles were named as here stated, with the different duties upon each.

JULY 30, 1846.

Cotton laces . . . . . . . . . . . . . . . 25 per cent.
Thread laces . . . . . . . . . . . . . . . 20 „

9 Stat. 46, 47.

MARCH 3, 1857.

Cotton laces . . . . . . . . . . . . . . . 19 per cent.
Thread laces . . . . . . . . . . . . . . . 15 „

11 id. 192.

MARCH 2, 1861.

Silk laces . . . . . . . . . . . . . . . . 30 per cent.
Cotton laces . . . . . . . . . . . . . . . 20 „
Thread laces . . . . . . . . . . . . . . . 20 „
Cotton lace, colored . . . . . . . . . . . 30 „

12 id. 186, 189, 190, 191.

AUG. 5, 1861.

Silk laces . . . . . . . . . . . . . . . . 40 per cent.

id. 293.

JULY 14, 1862.

Thread laces . . . . . . . . . . . . . . . . 30 per cent.
Cotton laces . . . . . . . . . . . . . . . 25 „

Id. 550, 556, sects. 6, 13.

JUNE 30, 1864.

Silk lace . . . . . . . . . . . . . . . . . 60 per cent.
Cotton lace . . . . . . . . . . . . . . . 35 „

13 id. 209, 210.

REV. STAT.

Cotton lace, colored . . . . . . . . . . . . 35 per cent.
Cotton lace . . . . . . . . . . . . . . . . 35 „
Thread lace . . . . . . . . . . . . . . . . 30 „
Silk laces . . . . . . . . . . . . . . . 60 „

Rev. Stat., pp. 464, 466, 472.

FEB. 8, 1875.<br>18 Stat. 307.

Congress here plainly recognizes the distinction made by the importers and traders, and establishes one rate of duty for silk laces and another for thread laces. The distinctions have run through the acts of Congress for more than thirty years; and we do not see how the judge at the trial could have adopted any other rule than the one complained of, to leave it to the jury whether the article was thread lace, a known commercial article, liable to duty as such, *eo nomine.*

The same reasoning will settle the question as to the application of the fifty per cent duty under the residuary clause of the act of 1864.

The case of *Smythe* v. *Fiske (supra)* is relied upon by the appellant. That case was not intended to overrule *Homer* v. *The Collector* or *Reiche* v. *Smythe (supra),* or the cases referred to in those authorities, nor was *Movius* v. *Arthur (supra)* understood to be in conflict with it. *Smythe* v. *Fiske* simply decided that silk ties, not being specifically enumerated in any of the acts, either of 1864 or of preceding years, the rate fixed by the act of 1864 was the correct rate for their assessment. To this we now hold.

It is not necessary to the correctness of that decision to hold that the act of 1864 forbids a reference to any previous acts to determine the duty upon articles mentioned in such acts *eo nomine*, and not specifically named in the act of 1864.

That such reference is proper was held in *Homer v. The Collector, supra.*. The tariff act of 1840 had imposed a duty of forty per cent upon the articles enumerated in the schedule referred to, among which were " almonds," by name. By the first section of the tariff act of 1857, these duties were reduced to thirty per cent. The second section made " fruits, green, ripe, or dried," liable to a duty of eight per cent only. In holding that almonds were liable to the duty of thirty per cent, and were not embraced in the general terms of the second section, Mr. Justice Nelson says: " The argument is, that almonds are dried fruit, and hence are provided for in the second section of the act of 1857 ; and evidence was offered to show that such was the commercial sense of the term. But this inquiry had nothing to do with it, . . . for certainly such proof could not exist or be found, in the sense of commercial usage, under any of the tariff acts, as duty had been imposed on almonds *eo nomine* almost immemorially, at least since the duty act of 1804, and continued in the duty acts of 1816, 1832, 1842, 1846. . . . Full effect can be given to the term ' fruit ' ' dried,' without the very forced construction to bring within it the article in question." The effect of both the acts was thus continued in force.

The same principle of reference to the former statute was sustained in *Reiche v. Smythe, supra.* The case was this : The twenty-third section of the act of March 2, 1861, provided that " animals living, of all kinds ; birds, singing and others; land and water fowls," — shall be exempt from duty.

The act of May, 1866, provided that a duty of twenty per cent *ad valorem* should be imposed " on all horses, mules, cattle, sheep, hogs, and other live animals." After the passage of this act, and by virtue of it, the collector exacted the duty of twenty per cent upon a lot of canary birds, which was paid under protest, and the question was as to its legality.

In delivering the opinion of the court, Mr. Justice Davis said: The act of 1866 is comprehensive enough to include birds ; and

if there had been no previous legislation, there would be justification for the position that Congress did not intend to narrow the meaning of the words. The act of 1861, he says, intended birds to be admitted free of duty, and the acts of 1866 must be limited to animals *ejusdem generis* with cattle, sheep, and horses. The two acts, he says, are *in pari materia*, both remaining in force, — that of 1861 admitting birds free of duty, and that of 1866 imposing the duty on horses and like animals, notwithstanding the general terms of the latter. The birds were, therefore, held to be exempt from duty.

In *Movius* v. *Arthur* (*supra*), the same principle of construing both acts *in pari materia*, to remain of force, prevailed. The act of 1861 (12 Stat. 192) imposed a duty of thirty per cent on "japanned leather" *eo nomine*. By the act of 1862 (12 id. 556), an additional duty of five per cent was imposed upon the same article by name. The act of 1872 (17 id. 230) enacted that, in lieu of existing duties, there should be imposed on "skins dressed and finished" ninety per cent only of the duties by law imposed, "it being the intent of this section to reduce the duties ten per cent on all leather not herein otherwise provided for." Although this act contained the words, "not herein otherwise provided for," — that is, not provided for in this act or this section, — it was held that the two statutes must be construed as both to be in force, and that "japanned leather," being *eo nomine* described in the former act, was not taken out of it by the general words of the later act, and that the larger duties of the acts of 1861 and 1862 were legally chargeable.

It will be observed, that, in two other sections, besides the eighth, of the act of 1864, manufactures of silk are referred to, indicating that the entire subject was not intended to be disposed of in that section. Thus, in sect. 5, p. 208, a duty of ten per cent is imposed on "lastings of mohair, silk, twist," &c. Again, in the same section, p. 207, a duty of fifty per cent *ad valorem* is imposed "on flannels composed in part of silk." See *Stewart* v. *Maxwell* (16 How. 150, 160) and *Penington* v. *Coxe* (2 Cranch, 33), on the point that the revenue acts are one system, and are to be read together.

By the twenty-second section of the act of 1864, it is enacted, "that all acts and parts of acts repugnant to the provisions of

this act be, and the same are hereby, repealed ; . . . and provided further, that the duties upon all goods, wares, and merchandise imported from foreign countries, not provided for in this act, shall be and remain as they were, according to existing laws prior to the 29th of April, 1864." 13 Stat. 216.

This may well be construed to retain duties on articles specifically enumerated in former acts, different from those imposed by the act of 1864, but not specifically named therein, and although the same class of subjects may be referred to in the act of 1864.

The judgment must be affirmed, upon the grounds following:

1. The commercial designation of an article among traders and importers, when clearly established, fixes its character for the purpose of the tariff laws.

2. When Congress has designated an article by its specific name, and imposed a duty upon it by such name, general terms in a subsequent act, or in a later part of the same act, although sufficiently broad to comprehend such article, are not applicable to it.

3. That the expression, "not otherwise provided for," in the eighth section of the act of 1864, does not deprive these rules of their ordinary application.

*Judgment affirmed.*