TONAWANDA, The. See Case No. 14,109.

## Case No. 14,093.

### TONG DUCK CHUNG v. KELLY.

[11 Chi. Leg. News, 273; 25 Int. Rev. Rec. 159; 7 Reporter, 741.] [1]

Circuit Court, D. Oregon. April, 1879.

CUSTOMS DUTIES—GENERAL DESIGNATION—SPECIFIC NAME—STARCH—SAGO.

1. The designation of an article by a specific name in a statute, as exempt from duty, excludes it from the operation of general words imposing duties in the same act which would otherwise include it, and make it subject to duty; therefore, the clause in section 2504, Rev. St., which imposes a duty on starch made from potatoes, corn, rice, or "any other material," does not affect sago, although it is starch, because the same is specifically exempted from duty by a clause in section 2505, Rev. St.

2. Production and manufacture of sago, derived from different plants, distinguished by the difference in appearance of granules under the microscope.

[This was an action brought by Tong Duck Chung to recover back the excess of duties demanded by John Kelly, collector of customs.]

Addison C. Gibbs and Mr. Bebee, for plaintiff.

Rufus Mallory, for defendant.

DEADY, District Judge. This action is brought to recover the sum of $256.45 paid by the plaintiff to the defendant as duties. The case was heard by the court without the intervention of a jury. From the pleadings and proofs it appears that in May, 1878, the plaintiffs imported from Hongkong into the district of Wallamet, and entered at this port, 92 boxes of merchandise, weighing 7,093 pounds, invoiced as "Sago flour," and valued at $216.89; that the collector refused to enter the article as "Sago flour," and required it to be entered under section 2504, Rev. St., as "starch," and imposed thereon, and exacted the payment of, a specific duty therefor, as such, of 3 cents per pound and 20 per centum ad valorem, which the plaintiff paid, under protest, on June 7, 1878. The complaint also contains a claim for $52.36 for an alleged excess of duties collected at the same time by the defendant upon 25 boxes of arrowroot flour, which was abandoned on the trial for want of some preliminary action in due season.

The only defense to the action contained in the answer is that the article imported "is in fact starch, not made from corn or potatoes, but made from rice, or some other material to the defendant unknown," the import

---

[1] [7 Reporter, 741, contains only a partial report.]

of which is that the article is starch, and therefore dutiable. Section 2505, Rev. St. p. 488, provides, among other things, that "sago, sago crude and sago flour," shall be exempt from duty. Section 2504 of the same (page 481) provides that "starch made of potatoes or corn" shall pay a duty of "one cent per pound and twenty per centum ad valorem; but, if "made of rice or any other material, three cents per pound and twenty per centum ad valorem." Sago being thus placed by congress on the free list, it is an immaterial question in this action whether it is starch or not. When an article is designated in an act of congress by a specific name, general terms in the same or a subsequent act, although broad enough to comprehend it, are not applicable to it. A designation eo nomine must prevail over general words. Homer v. The Collector, 1 Wall. [68 U. S.] 486; Reiche v. Smyth, 13 Wall. [80 U. S.] 162; Movius v. Arthur, 95 U. S. 144; Arthur v. Lahey, 96 U. S. 112; Arthur v. Rhums, Id. 143. But upon the argument the defense was shifted from the ground that the argument was starch simply, and it was insisted that it was starch and not sago; and, as all kinds of starch except sago are claimed to be dutiable under section 2504, supra, the argument is, if this article is not sago, then the duties were properly imposed, and the plaintiff cannot recover. The proof shows that the goods were imported from Hongkong in the American vessel Herbert Black and the British one City of Glasgow; that the article is used here principally among the Chinese for food, and to some extent for starch—mostly by the American laundries for the purpose of giving gloss and elasticity to the clothes, and in the proportion of one part to three of corn starch. Independently of the duty, it sells in this market at from 15 to 16 cents a pound, while Oswego corn starch sells at from 7 to 10. Like many, if not most, plants used for food, sago is largely starch. The manufacture or making of starch consists simply in separating the starch granules from the other matter of the plant; and this is usually done by the application of cold water to the material containing them after the same is ground or macerated. The minute starch granules, of the fineness of ordinary flour, are taken up by the water, and suspended therein until the water is saturated with the starch, when, the former being drawn off and allowed to settle, the fecula or sediment is found at the bottom in the shape of a soft white powder, crispy to the touch, like flowers of sulphur, and this is starch. Ure's Dict. New Am. Cy. verbum "Starch." The sago flour or meal is practically starch. It is obtained from the pith contained in the stems of a genus of palms called "sagus," that grow on the coasts and islands of the Indian Ocean. They seldom obtain a height of more than thirty feet, but the bole is large in proportion, and at a certain stage of its growth is filled with a spongy, medulary matter like the elder. The tree is cut into sections and the pith beaten in water until the woody fibre is separated from the meal. The water is then drawn off and the fecula or meal subsides and forms a powder of a dirty white color, which is commonly bleached with chloride of lime, and constitutes the crude sago or sago meal or flour. It is said that 500 or 600 pounds may be obtained from the pith of a single tree. While soft and undried it is moulded into cakes, and used by the natives as bread, to whom it is emphatically "the staff of life." Sago is also prepared for use by being granulated. This is done by forming the flour into a paste and passing it through a sieve or perforated disk, and allowing it to fall upon a heated surface. Formerly these grains were about the size of a coriander seed, and of a brownish-white color; but some time since the Chinese settled in Singapore—the principal depot for sago—and introduced there their methods of refining and granulating it. The sago made by them is of the size of a pin head; is hard and of pearly luster, and hence called pearl sago— sago perlatum. These granulated forms of the article, until lately, constituted the sago of commerce—at least in the United States. But the residence of the Chinese upon the Pacific coast has led to the introduction here of sago flour or meal in considerable quantities from Hongkong, where it is imported from Singapore as an article of food. Zell's Cy.; Am. Cy.; U. S. Dis.; Wood's Thera. & Phar. verbum "Sago." The microscope appears to be the only reliable test by which to determine from what plant a given granule of starch is taken. In this case four experts, who had made this article the subject of miscroscopic examination, were examined as witnesses. Three of them testified that the flour is sago, and one that it is not; but the latter, while inclining to the opinion that it is tacca, was not able to say certainly what it is. In addition to this, I had the benefit of a personal examination under the microscope, of the article in question, and pearl and common sago, as well as the starches of other plants, in the presence of and under the manipulation of the latter expert and two of the former.

In my judgment, the decided weight of evidence is in favor of the proposition that this article is sago. There is no evidence in the case tending to show that it is anything else than sago, except the conjectural opinion of the one expert, that it may be tacca. Now, so far as it appears, tacca comes from the Society and the Sandwich Islands. It is not produced in large quantities nor much used in commerce, and when it is, is often called arrowroot. The evidence tends to show that this article was brought from Singapore to Hongkong—a conclusion intrinsically probable when we consider the distance and means of com-

munication between the two places, the large amount of sago collected at Singapore and the fact that its manufacture and the trade therein at that place are largely in the hands of the Chinese. Neither is the arrowroot or tacca of the Society or Sandwich Islands likely to find its way to China and from there here. If brought to this country at all, it would probably come direct. But it is certain that this article was brought from Hongkong here. In my judgment it was imported from Singapore to that place, and it is the meal from the farinaceous pith of the sago palm, which being bleached may be very properly called sago flour. But it matters not what form of sago it is, as the paragraph of the statute exempting sago from duty includes the article whether crude or manufactured.

There must be a finding for the plaintiff that the article in question is sago and exempt from duty and that the plaintiff is entitled to recover back the sum paid upon it as duty.