## DRAKENFELD & CO. v. UNITED STATES (No. 685).[1]

CADMIUM SULPHIDE, A PIGMENT OR COLOR.

The importation may be described as a pigment or color, or as a chemical compound or salt. Its place in science and commerce, however, has apparently been fixed by its use and by its being chiefly known as a pigment or color. This designation is the more specific and it must prevail as against one more general in kind, and without any limitation as to use or other qualification. It was dutiable as assessed under paragraph 58, tariff act of 1897.—Fink v. United States (170 U. S., 584).

United States Court of Customs Appeals, February 1, 1912.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6659 (T. D. 28402).

[Affirmed.]

*Comstock & Washburn (Albert H. Washburn of counsel)* for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Chas. D. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case is "cadmium sulphide," sometimes called "cadmium yellow," and the importation was made under the tariff act of 1897.

The exhibits show the article in the form of dry powder, having in one case a clear lemon color and in another case a deep saffron. It is said that the color of the substance varies from a light yellow to a dark red as a result of the differing conditions under which it is prepared.

The collector classified the importation as a pigment or color under paragraph 58 of the act, and assessed duty thereon at the rate of 30 per cent ad valorem in accordance therewith.

The importers protested against this classification, and contended that the importation was free as "cadmium" under paragraph 513, or was dutiable at only 25 per cent ad valorem as a "chemical compound or salt, not specially provided for," within the terms of paragraph 3 of the act. This protest was heard upon testimony by the Board of General Appraisers and was overruled. The case was thereupon appealed to the United States Circuit Court, Southern District of New York, where additional testimony was incorporated in the record. The case did not come to trial in the circuit court, but was transferred to this court under the present act.

The appellants advise the court in their brief that they do not now insist upon their claim for free entry of the importation as "cadmium," but rely wholly upon the claim that the article is a chemical compound or salt, not specially provided for, and therefore dutiable at 25 per cent ad valorem under paragraph 3.

[1] Reported in T. D. 32248 (22 Treas. Dec., 231).

It seems from the testimony and authorities that the article at bar is certainly a pigment or color, and that it is also just as certainly a chemical compound or salt; and it might aptly be classified under either of the competing paragraphs in the absence of the other one.

Cadmium sulphide, CdS, is artifically produced as a precipitate resulting from the action of sulphureted hydrogen upon cadmium sulphate or upon certain other soluble cadmium salts. This statement alone seems to be sufficient authority for describing it as a chemical compound or salt.

It seems to be equally well established that the substance is a pigment or color. The following quotations show the attitude of the authorities in that behalf:

The New International Encyclopædia:

*Cadmium.*—Cadmium sulphide is an orange or lemon-yellow powder that is of great permanency, and is used as a pigment under the name of cadmium yellow. It is also used for coloring toilet soaps, for the production of blue flames in pyrotechny, and in calico printing.

Wagner's Chemical Technology:

*Cadmium yellow (CdS).*—This pigment is prepared by the action of sulphureted hydrogen upon soluble cadmium salts; a little free acid should be present. The hotter and more concentrated the solution, the more the product inclines to a red.

The Century Dictionary and Cyclopedia:

*Cadmium yellow.*—A pigment prepared by precipitating a solution of sulphate of cadmium with sulphureted hydrogen, forming a sulphide of cadmium. It varies in shade from a light yellow to a deep orange, and all its tones are very clear and bright. It possesses good body and is permanent in light and air.

Murray's New English Dictionary:

Cadmium yellow, an intense yellow pigment, consisting of cadmium sulphide artificially prepared.

Thorpe, Dictionary of Applied Chemistry:

*Cadmium sulphide—Cadmium yellow.*—This pigment may be produced by the addition of sulphureted hydrogen or an alkiline sulphide to a solution of cadmium salt. * * *

In Watt's Manual of Chemistry and also in Parry & Coste's Chemistry of Pigments cadmium sulphide is denominated a pigment.

The testimony of the witnesses contained in the record is quite consistent with these quotations. It is, however, stated by the importer that in his trade he sells such importations altogether to manufacturers of colored glass, and that the substance is used by them neither as a color nor pigment. He states that in the coloring of glass the sulphide is used in connection with selenium metal; that the two are together mixed in with molten glass, the cadmium in such case acting only as a reagent upon the selenium, so that the glass is colored directly by the selenium alone. The importer contends, therefore,

that so far as his trade is concerned the cadmium sulphide does not serve directly or at all as a pigment or color. He also maintains that this use of the article in the manufacture of glass is its chief use, even though it is also otherwise used in lesser measure as a pigment or color.

Giving this testimony due weight, it is nevertheless safe to say upon the entire testimony that cadmium sulphide is either used directly and alone as a pigment or color, or is used in conjunction with other materials for the purpose of coloring glass or other substances, it being one of the agencies to produce that result, and that the recognized authorities have upon these premises universally defined it as a pigment or color.

As stated above, the court is therefore led to the conclusion that the importation may be aptly described on the one hand as a pigment or color and on the other hand as a chemical compound or salt. A decision, therefore, becomes necessary upon the competition which thus arises between these classifications.

As applied to the article in hand, it seems that the term pigment or color is more limited and specific than the term chemical compound or salt. The article is in substance a chemical compound or salt, and such is its generic classification; but it is a special kind of chemical compound or salt, namely, one which is used as a pigment or color. By the latter description a limitation is imposed upon the former one. By nature and composition the substance in question is essentially a chemical compound, but it belongs to a species of that general class, namely, the species of chemical compounds which is especially used as a pigment or color. A similar question arose in the case of Fink v. United States (170 U. S., 584). In that case the article involved was muriate of cocaine. The competing paragraphs were those severally providing for "medicinal preparations" and "chemical compounds and salts." It was held that the article (muriate of cocaine) was both a medicinal preparation and a chemical compound or salt, but that the description by use, as a medicinal preparation, was more specific than that by composition, as a chemical compound or salt, because it specified a particular and limited class or species of such substances by force of that qualification.

The opinion in that case reads in part as follows:

In reason, the result of the certified facts is simply this, that muriate of cocaine is in its narrow aspect a medicinal preparation, in its wider a chemical salt, and hence that chemical salt is a generic term designating all articles of that character, and hence embracing muriate of cocaine as the genus, must as a matter of course contain within itself the species which are embodied in it.

As above stated, it is contended by appellants that the use of cadmium sulphide as a pigment or color is a minor use, and that the major use of the substance is as a reagent only in the manufacture of glass, and that its classification should not be controlled by such lesser use, but only by the chief use to which the article is applied.

This argument would apply with greater force if both competing classifications were couched in terms of use, but in this case the description "chemical compound or salt" does not express a use of the article, but rather its material origin and composition. The description of an article as a "chemical compound or salt" does not of itself throw any light upon the use to which such article may be applied. As between two competing classifications whose several descriptions refer only to different uses to which the importation may be put, it may be said in general that the chief use should control the classification. But in this case it does not sufficiently appear by the testimony, as a matter of fact, that the use made of the substance in the manufacture of glass is the chief use, nor is it at all clear that even such use should not be denominated a use as a pigment or a color. And in any event it appears that other uses of the article as a pigment or color are so general and well recognized that they have apparently fixed the standing of the article in science and commerce, so that it is chiefly known as a pigment or color. It, therefore, appears that this designation according to a specific use should now prevail over a competing description of a general character, without special limitation as to use or other qualification.

Upon these considerations the court concludes that the decision of the board should be, and the same is, *affirmed.*