DRAKENFELD & Co. *v.* UNITED STATES (No. 1911).[1]

1. CONSTRUCTION—RELATIVE SPECIFICITY—CLASSIFICATION BY USE.
   A designation according to a specific use prevails over a competing description of a general character, without special limitation as to use or other qualification.—Drakenfeld & Co. *v.* United States (2 Ct. Cust. Appls., 512; T. D. 32248).
2. CONSTRUCTION—RELATIVE SPECIFICITY—"NOT SPECIALLY PROVIDED FOR."
   The general rule that the presence of the "Not specially provided for" clause in one of two competing provisions and its absence from the other may effect the classification of the merchandise under the provision which lacks it applies only where the goods are *equally* included within each of the competing provisions.
3. CONSTRUCTION, PARAGRAPH 63, TARIFF ACT OF 1913—AIDED BY CONTEXT— CERAMIC COLORS.
   The context of paragraph 63, tariff act of 1913 (as also that of its ancestor paragraph 56, tariff act of 1909) evinces Congress's unmistakable purpose to select from all colors those colors which are used in the ceramics and expressly rate them for dutiable purposes.
4. "DUNKELPURPUR"—CERAMIC COLORS—GOLD COMPOUNDS.
   Merchandise invoiced as "dunkelpurpur" (German for dark purple), conceded to be a ceramic color and also a mixture of which gold constitutes the element of chief value, is dutiable under paragraph 63, tariff act of 1913, as a ceramic color, and not under paragraph 65 as a mixture of which gold constitutes the element of chief value.

United States Court of Customs Appeals, April 1, 1919.

APPEAL from Board of United States General Appraisers, G. A. 8158 (T. D. .37604).

[Affirmed.]

---

[1] T. D. 37979 (36 Treas. Dec., 328).

*Comstock & Washburn (Albert H. Washburn* of counsel) for appellants.
*Bert Hanson*, Assistant Attorney General (*Charles D. Lawrence*, special attorney of counsel), for the United States.

[Oral argument Jan. 9, 1919, by Mr. Washburn and Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal has been presented with exceptional fullness of the record and ability of argument both in the briefs and at the oral hearing before this court. It is agreed that its final determination rests upon the proposition of law as to which of two provisions of the tariff act of 1913, hereinafter quoted, controls. The merchandise was invoiced as "Dunkelpurpur," meaning dark purple. It is conceded by all parties to be a "ceramic color" and also a "mixture of which gold constitutes the element of chief value," within both of the competing provisions of the said act, which are paragraphs 63 and 65, reading:

63. Enamel paints, and all paints, colors, pigments, stains, crayons, including charcoal crayons or fusains, smalts, and frostings, and all ceramic and glass fluxes, glazes, enamels, and colors, whether crude, dry, mixed, or ground with water or oil or with solutions other than oil, not specially provided for in this section, 15 per centum ad valorem; all paints, colors, and pigments commonly known as artists' paints or colors, whether in tubes, pans, cakes, or other forms, 20 per centum ad valorem; all color lakes, whether dry or in pulp, not specially provided for in this section, 20 per centum ad valorem.

65. Salts and other compounds and mixtures of which bismuth, gold, platinum, rhodium, silver, or tin constitute the element of chief value, 10 per centum ad valorem.

The collector of customs at the port of New York classified the importation for dutiable purposes as a "ceramic color" under the former paragraph, and, upon due protest, by a majority decision, the Board of General Appraisers overruled the contention of the importers that the importation was properly ratable for duty as a "mixture in chief value of gold," under the latter paragraph. The importers appeal.

More concisely contrasted, the competing provisions of the statute may be stated as follows:

63. * * * Ceramic * * * colors, whether crude, dry, mixed, or ground with water or oil or with solutions other than oil, not specially provided for in this section, * * *.

65. Salts and other compounds and mixtures of which * * * gold, * * constitute the element of chief value, * * *.

It being conceded that the importation falls within both said provisions, the single determinative issue is presented, the parties hereto agree, which of the two was intended by Congress to be controlling as to this particular class of merchandise.

The court is of the opinion that it is concluded herein by its previous decision in Drakenfeld & Co. *v.* United States (2 Ct. Cust. Appls., 512; T. D. 32248).

Ceramic colors are those colors used in the ceramics or pottery arts. The phrase is a description by *use*, and this use of particular colors is emphasized by its contrasted employment with the word "colors" previously employed generally by Congress in the same paragraph. Its qualified use here makes certain the deliberate purpose of Congress in its second engrossment. By this phrase after legislating with reference to all "colors," generally, Congress has expressly named for inclusion within the same paragraph *certain* colors according to their *use*, to wit, in the ceramics.

In the Drakenfeld case, supra, the contest was upon an importa- of "cadmium sulphide" or "cadmium yellow," the issue being whether it was properly classifiable as a "pigment" or "color," under paragraph 58 of the tariff act of 1897, or as a "chemical compound or salt," under paragraph 3 of that act. This court said (at p. 513):

It seems from the testimony and authorities that the article at bar is certainly a pigment or color, and that it is also just as certainly a chemical compound or salt; and that it might aptly be classified under either of the competing paragraphs in the absence of the other one.

Further, the court said (at p. 514):

As applied to the article in hand, it seems that the term "pigment or color" is more limited and specific than the term "chemical compound or salt." The article is in substance a chemical compound or salt, and such is its generic classification; but it is a specific kind of chemical compound or salt, namely, one which is used as a pigment or color. By the latter description a limitation is imposed upon the former one. By nature and composition the substance in question is essentially a chemical compound, but it belongs to a species of that general class, namely, the species of chemical compounds which is especially used as a pigment or color. A similar question arose in the case of Fink v. United States (170 U. S., 584).

Commenting upon the case of Fink *v.* United States, supra, the court further said:

A similar question arose in the case of Fink v. United States (170 U. S., 584). In that case the article involved was muriate of cocaine. The competing paragraphs were those severally providing for "medicinal preparations" and "chemical compounds and salts." It was held that the article (muriate of cocaine) was both a medicinal preparation and a chemical compound or salt, but that the description by use, as a medicinal preparation, was more specific than that by composition, as a chemical compound or salt, because it specified a particular and limited class or species of such substances by force of that qualification.

The doctrine of the decision was precisely stated by the court (at p. 515), as follows:

It, therefore, appears that this designation according to *a specific use* should now prevail over a competing description of a general character, without special limitation as to use or other qualification.

That view accords with and is supported by the well-settled doctrine of this and the Supreme Court of the United States. United States *v.* Snow's United States Sample Express Co. (8 Ct. Cust. Appls., 351;

T. D. 37611); United States *v.* Lorsch & Co. (8 Ct. Cust. Appls., 109; T. D. 37222); Monticelli Bros. et al. *v.* United States (8 Ct. Cust. Appls., 21; T. D. 37162); Brown & Co. *v.* United States (7 Ct. Cust. Appls., 309; T. D. 36871); Auffmordt & Co. et al. *v.* United States (7 Ct. Cust. Appls., 56; T. D. 36320); United States *v.* Boker & Co. (6 Ct. Cust. Appls., 243–5; T. D. 35472); Quirk et al. *v.* United States (6 Ct. Cust. Appls., 444; T. D. 35983); United States *v.* Tower (6 Ct. Cust. Appls., 562; T. D. 36199).

In United States *v.* Boker & Co., supra, this court expressed the rule and cited supporting authorities as follows:

Much stress is laid upon the words "all other agricultural implements of any kind and description." While the words "of any kind and description" are broad and most comprehensive, we must bear in mind that they are predicated of and limited to "*agricultural* implements," and therefore can not include more than those terms embrace, though of course their effect and office is to exhaust everything within that literal confinement. We are accordingly relegated to those words as above defined for the scope of this phrase and paragraph.

All these considerations imply and necessitate that the use of the implement must determine its classification whether or not an agricultural implement within the paragraph, and that that use, and the determinative fact, is chief use.

That rule is so well established and of such frequent reiteration by the courts that its suggestion seems sufficient. This court affirmed and applied the rule as to "smokers' articles" in Knauth *v.* United States (1 Ct. Cust. Appls., 334; T. D. 31432); as to "wire rods," in Athenia Steel & Wire Co. *v.* United States (1 Ct. Cust. Appls., 494; T. D. 31528); applied it in Drakenfeld & Co. *v.* United States (2 Ct. Cust. Appls., 512; T. D. 32248); adopted it as to "jute manufacturing machinery" in United States *v.* Hempstead & Son (3 Ct. Cust. Appls., 436; T. D. 33004), and as to "philosophical and scientific instruments," etc., in United States *v.* Kastor & Bros. (6 Ct. Cust. Appls., 52; T. D. 35323). In fact no principle is more firmly established in customs adjudication. Magone *v.* Wiederer (159 U. S., 555); Magone *v.* Heller (150 U. S., 70); Cadwalader *v.* Wanamaker (149 U. S., 532); Walker *v.* Seeberger (149 U. S., 541); Chew Hing Lung *v.* Wise (176 U. S., 156); Meyer *v.* Cadwalader (89 Fed., 963); Smith *v.* United States (93 Fed., 194).

It is, however, contended that because this phrase of paragraph 63 is followed by the words, "not specially provided for in this section," and the enumerations of paragraph 65 are not so modified, thereby all merchandise falling within each is relegated to the latter. While this is the general rule it is too well settled to now be questioned or ignored, that this rule applies only where the goods are *equally* included within each of the competing paragraphs.

Where, however, the competing tariff enumerations are not equal in force of inclusion, such phrases have been held not to modify or diminish the comprehensiveness of the modified language. This court in the case of Bischoff & Co. *v.* United States (7 Ct. Cust. Appls., 138; T. D. 36458), took occasion to consider that rule and stated its application, as follows:

As suggested, paragraph 381, as did its ancestors, contains the n. s. p. f. provision. The purpose and effect, generally speaking, of such provisions was considered in the case of United States *v.* Snow (6 Ct. Cust. Appls., 120; T. D. 35388). In substance it

was said that its presence in a given paragraph advised the customs authorities that merchandise otherwise within it might be classified under some other paragraph; that if the other paragraph contained an eo nomine provision and the paragraph in which the n. s. p. f. provision was found was general and not eo nomine, the former would control; that an eo nomine provision was not necessarily shorn of its controlling force because coupled with the provision n. s. p. f.; that where one of two competing paragraphs contained the n. s. p. f. provision and the other did not, the description of each being in other respects equally specific, the presence in the one and the absence from the other of such provision would determine the classification of merchandise equally within either paragraph. See in this connection Hall v. United States (131 Fed., 684; T. D. 25340); same case 136 Fed., 774); and Thomas v. Wanamaker (129 Fed., 92).

The more extended statement therein referred to as given in United States v. Snow's United States Sample Express Co., supra, was couched in the following language:

But the Government urges that the term "not otherwise specially provided for" in paragraph 256 nevertheless requires that these shirt bosoms be excluded therefrom, in which event it says they fall within paragraph 358.

The presence of this term in a given paragraph advises the customs authorities that merchandise otherwise within the paragraph may be elsewhere classified, because elsewhere provided for. If the provision found elsewhere is eo nomine, and the one in which the above term is found is general, the eo nomine provision will control, because the more specific; and an eo nomine designation is not per se shorn of its controlling force because it is coupled with the expression "not otherwise specially provided for." Movius v. Arthur (95 U. S., 144); Arthur v. Lahey (96 U. S., 112); Chew Hing Lung v. Wise (176 U. S., 156); Krauss v. United States (2 Ct. Cust. Appls., 17; T. D. 31574).

Government counsel, however, misapprehends the law in its claim that because the term "not otherwise specially provided for" is found in paragraph 256 the merchandise here can not be classified thereunder if any other applicable provision therefor can be found.

In Hall v. United States (T. D. 25340) a decision of the Board of General Appraisers was affirmed. In the decision of the board by De Vries, G. A., discussing the effect of the term "not specially provided for," it was said, in substance, that if two provisions were equally applicable to merchandise the presence in the one and the absence in the other of that term would determine its classification, but that it was only invoked to determine a doubt between equally applicable provisions of law. We think this manifestly is the sound rule and, applying it to this case, are clear that the shirt bosoms here are dutiable under paragraph 256.

That it is a principle of not infrequent application may be inferred from the statement in Loewenthal & Co. v. United States (6 Ct. Cust. Appls., 209, 218; T. D. 35464), reading:

The remaining element of relative specificity is the presence of the words "and not specially provided for" in paragraph 333 and their absence from 358. We have already seen that aside from this phrase the pertinent language of paragraph 333 is the more specific. The doctrine in that situation was stated and numerous supporting authorities cited in Knauth, Nachod & Kuhne v. United States (4 Ct. Cust. Appls., 58; T. D. 33307), as follows:

That the words "not specially provided for," following "calfskins tanned, or tanned and dressed," do not lessen the relative specificity of the modified phrase itself when contrasted with other competing provisions of the law is well settled. Arthur v. Lahey (96 U. S., 112); Hensel v. United States (2 Ct. Cust. Appls., 221;

T. D. 31951); United States *v.* Schwarz (140 Fed., 989); United States *v.* Knauth, Nachod & Kuhne (150 Fed., 610); Hall et al. *v.* United States (136 Fed., 774); Thomas *v.* Wanamaker (129 Fed., 92); Faxon *v.* Russell (154 U. S., 644); Arthur *v.* Rheims (96 U S., 143); Arthur *v.* Davies (96 U. S., 135).

The same rule was applied by this court in the recent case of W. N. Proctor Co. *v.* United States (6 Ct. Cust. Appls., 119; T. D. 35387).

The principle is very succinctly stated by Judge Lacombe, speaking for the Circuit Court of Appeals for the Second Circuit, in United States *v.* Albert Lorsch & Co. (158 Fed., 398, 399), stating:

The group of articles known as "diamonds and other precious stones" includes many different species. When Congress selects by name one of these species and provides that manufactures of that particular stone shall be dutiable at a different rate, it so clearly indicates its intention to withdraw the article from the general, as soon as it has become a completed manufacture, that the absence of the words "not specially provided for" in the paragraph covering the group is not particularly significant.

The context of paragraph 63 bears unmistakable evidence of the congressional purpose which this court is bound to respect and uphold. The particular provision was contained in the act of 1909, paragraph 56, and herein reappears carefully revised and preserved in essentially the same language. In the same paragraph (63) Congress had already provided for "all colors" at the same rate of duty provided for these. Nevertheless, with no doubtful purpose, by repetition Congress thus advisedly selected and designated in precise and express words these *certain* colors for duty purposes according to their use, to wit, in the ceramics, thereby unquestionably evidencing an intent to select out from "all colors" these particular colors so used and expressly so rate them for dutiable purposes. Rarely, indeed, is the congressional intent so unmistakably evidenced, and the duty of this court becomes obvious.

*Affirmed.*