MITSUI PETROCHEMICALS (AMERICA), LTD., PLAINTIFF *v.*
UNITED STATES, DEFENDANT

Court No. 92–02–00107

(Decided July 30, 1997)

*Siegel, Mandell & Davidson, P.C. (Brian S. Goldstein and Laurence M. Friedman)* for plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, *(Mikki Graves Walser)* for defendant.

### OPINION

MUSGRAVE, *Judge:* Plaintiff Mitsui Petrochemicals America, Ltd. ("Mitsui") brings this action to contest the classification made by the United States Customs Service ("Customs") on imports of the chemical compound known as Visnex XLM–12 ("Visnex"). Customs classified and liquidated Visnex under Harmonized Tariff Schedule of the United States ("HTSUS") subheading 3902.30.00 which provides for propylene copolymers. Mitsui asserts that Visnex is correctly classified under HTSUS subheading 3811.29.00 which covers viscosity improvers as additives for lubricating oils. Both parties have moved for summary judgment pursuant to CIT R. 56. The Court has jurisdiction over this action under 28 U.S.C. § 1581(a) and finds that there is no genuine issue of material fact and grants Mitsui's motion for summary judgment for classifying Visnex under HTSUS subheading 3811.29.00.

## BACKGROUND

The subject merchandise is sold under the name of Visnex XLM–12 and is composed of the two monomers ethylene and propylene in equal proportions. Visnex also contains a stabilizer/antioxidant known as Irganox 1010 ("Irganox") in the amount of 1,500 parts per million. Visnex is properly described as a liquid although it exhibits qualities not usually associated with a liquid such as it can be shredded and cut with a knife. Upon visual inspection, Visnex appears as a thick and pliable clear gel. When added to motor oils, Visnex improves the oil's viscosity; that is Visnex makes the motor oil more resistant to flow. Sufficient viscosity is vitally important for motor oils to properly lubricate the engine parts they contact. Motor oils without viscosity improvers lose the ability to protect engine parts at high temperatures. Visnex is used as an oil additive because it does not inhibit the oil's cold flow properties while Visnex markedly improves the oil's high heat viscosity.

Visnex can be combined with oil in a one or two-step process. In the instant case, the two-step process is utilized: Visnex is first shredded into small lumps and is added to a small batch of the base oil where it is dissolved; this mixture is then diluted with the base oil until the desired ratio of Visnex to base oil is achieved.

Upon liquidation of the subject merchandise, Customs classified Visnex as "polymers of propylene or of other olefins, in primary forms: propylene copolymers" under HTSUS subheading 3902.30.00 dutiable at the rate of 2.2¢/kg. plus 7.7% *ad valorem*. Mitsui timely filed a protest arguing that Visnex was properly classified as a "viscosity improver" under HTSUS subheading 3811.29.00 dutiable at the rate of 7% *ad valorem*. Customs denied Mitsui's protest and Mitsui timely filed a complaint with the Court.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2639(a)(1), Customs' decision is "presumed to be correct" and the "burden of proving otherwise shall rest upon the party challenging such decision."[1] However, recent decisions from the Court of Appeals for Federal Circuit ("CAFC") have ruled that the presumption of correctness applies solely to factual questions and this Court's duty is to find the correct result.[2] The Court reviews the ultimate ques-

---

[1] 28 U.S.C. § 2639(a)(1) (1994).

[2] The duty of the Court to find the correct result in a classification case stems from both legislative and judicial sources. "[T]he trial court * * * must consider whether the government's classification is correct, both independently and in comparison with the importer's alternative. * * * [T]he court's duty is to find the correct result, by whatever procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States*, 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984). "If the Court of International Trade is unable to determine the correct decision on the basis of the evidence presented in any civil action, the court may order a retrial or rehearing for all purposes, or may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision." 28 U.S.C. § 2643(b). *See Goodman Mfg., Inc. v. United States*, 13 Fed. Cir. (T) ___, ___, 69 F.3d 505, 508 (1995) (the statutory presumption of correctness attaches only to an agency's factual determinations) *and Rollerblade, Inc. v. United States*, 15 Fed. Cir. (T) ___, ___, Ct. No. 96–1397 at 6 (1997) (legal issues are not afforded deference under 28 U.S.C. § 2639 or under the administrative deference standard promulgated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).

tion in a classification case *de novo*. As the Court has found, classification decisions entail a three step process.

> The purely factual inquiry in every classification case involves determining what the subject merchandise is and what it does. The purely legal question involves determining the meaning and scope of the tariff provisions. The ultimate mixed question becomes whether the merchandise has been classified under an appropriate tariff provision, or equivalently, whether the merchandise fits within the tariff provision. This ultimate issue involves both a legal and factual component: indeed the ultimate issue is an inseparable hybrid of the discrete factual and legal inquiries and is therefore a mixed question of law and fact reviewable *de novo*.

*Bausch & Lomb, Inc. v. United States,* 21 CIT 166, 169, 957 F. Supp. 281, 284 (1997). The purely factual inquiry is subject to the "clearly erroneous" standard while the purely legal question and the ultimate mixed question of law and fact are reviewable *de novo. Id.* at 285.

In the instant case, the parties do not argue the purely factual or purely legal questions involved in the classification process. What is left for the Court to determine is the ultimate mixed question of law and fact, or whether the facts satisfy or fit the statutory standard which the Court reviews *de novo* to determine the correct result.

Both parties have moved for summary judgment. Summary judgment is proper when "there is no genuine issue as to any material fact and * * * the moving party is entitled to a judgment as a matter of law." CIT R. 56. The Court finds that there is no genuine issue as to any material fact and therefore the Court has the power to render summary judgment.

## DISCUSSION

### I. *Competing Tariff Provisions:*

Upon liquidation, Customs classified Visnex under the HTSUS subheading 3902.30.00 which provides:

| 3902 | Polymers of propylene or of other olefins, in primary forms: |
| --- | --- |
| * * * * * * * |
| 3902.30.00 | Propylene copolymers * * * |

HTSUS (1992). The dutiable rate at liquidation for Visnex was 2.2¢/kg. plus 7.7% *ad valorem*. Mitsui contends that Visnex is properly classified under HTSUS subheading 3811.29.00 and dutiable at 7% *ad valorem*. HTSUS subheading 3811.29.00 provides:

| 3811 | Antiknock preparations, oxidation inhibitors, gum inhibitors, viscosity improvers, anticorrosive preparations and other prepared additives, for mineral oils (including gasoline) or for other liquids used for the same purposes as mineral oils: |
| --- | --- |
| * * * * * * * |

| 3811.21.00 | Additives for lubricating oils: |
| | Containing petroleum oils or oils obtained from bituminous minerals * * * |

| * | * | * | * | * | * | * |

3811.29.00        Other * * *

HTSUS (1992).

Under the HTSUS General Rules of Interpretation ("GRI"), the first step in determining the correct classification of an article is to consider the terms of the headings and relative section or chapter notes under GRI 1. Reviewing the terms of the headings, it becomes evident that Visnex could be classified under both subheadings. Visnex is agreed by both parties and the Court to be a propylene copolymer as contemplated by subheading 3902.30.00. Pl.'s Statement of Material Facts at 4 ("Visnex XLM–12 contains a copolymer * * * of balanced (equal weight) proportions of ethylene and propylene."), Def.'s Statement of Material Facts at 1 ("The merchandise is simply an ethylene-propylene copolymer with an appropriate amount of stabilizer added."). However, Visnex is also used as viscosity improver for motor oils placing it under the ambit of subheading 3811.29.00 as well. Def.'s Resp. to Pl.'s Statement of Facts at 2 ("that gives Visnex its utility as a viscosity improver, * * *"), Pl.'s Statement of Material Facts at 5 ("Visnex XLM–12 is designed and produced to be a viscosity improver."). Further, the applicable section and chapter notes do not provide the key to unlocking the correct classification query. Although the parties argue over the correct classification, the Court finds that Visnex "might aptly be classified under either of the competing [subheadings] in the absence of the other one." *Drakenfeld & Co. v. United States*, 2 Ct. Cust. 512, 513 (1912).

Moving through the GRI, GRI 3 states that when the article is

> *prima facie,* classifiable under two or more headings, classification shall be effected as follows:
> > (a) The heading which provides the most specific description shall be preferred to headings providing a more general description.

In determining whether Visnex is *"prima facie"* classifiable under the two subheadings in question, the Court turns to the definition of *prima facie*;

> At first sight; on the first appearance; on the face of it; so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary.

Black's Law Dictionary 1189 (6th ed. 1990) (citation omitted). As both parties have observed that Visnex can be described as a propylene copolymer under subheading 3902.30.00 as well as a viscosity improver, the Court finds that Visnex is *prima facie* classifiable under the competing tariff provisions.

Pursuant to GRI 3, the Court finds that when an item is *prima facie* classifiable under two tariff subheadings, the subheading that most spe-

cifically describes the merchandise will be used for its correct classification. For the reasons that follow, the Court finds that subheading 3811.29.00 is more specific and therefore the correct classification for Visnex.

II. *Specificity:*

HTSUS subheading 3811.29.00 is the most specific and the correct classification for Visnex. GRI 3's rule of specificity is not new but is rather the codification of a long history of classification jurisprudence. In *Homer v. The Collector*, 68 U.S. 486 (1863), the Court examined the correct classification for almonds. In that case the correct classification decision turned on placing almonds under the more specific tariff provision,

> whether an import, whose specific name is unquestioned, and is given specifically, bears also another name generally, in the tariff, strikes at the roots of the judicial function of interpreting statutes.

*Id.* at 490. Later the Court cited the *Homer* decision for the proposition that "the article will be classified by its specific designation rather, than under a general description." *American Net & Twine Co. v. Worthington,* 141 U.S. 468, 474 (1891) (citations omitted).

In a momentous case, the Supreme Court was faced with a similar issue that is now at bar. In *Fink v. United States*, 170 U.S. 584 (1898), the Court found that the article in question, muriate of cocaine, was classifiable under both of the competing tariff provisions.

> It would then follow that if either of the paragraphs stood alone in the statute, disembarrassed of the provisions found in the other, the preparation might properly come under the head of either. * * * the question is, which, if either, of the two is so dominant in its control of the article in question as to exclude the operation thereon of the other? The rule is that this, if possible, is to be determined by ascertaining whether one of the two paragraphs is more definite in its application to the article in question than is the other.

*Id.* at 586–87. (citations omitted). Since Visnex has been found to be *prima facie* classifiable under the two competing subheadings, classification turns on which subheading is more definite or specific. In *Fink* the Court concluded that

> In its ultimate analysis, therefore, the question asked is only this: Is the genus, chemical salt, more comprehensive than the species, muriate of cocaine? Thus understood, it becomes, of course necessary to answer the first question in the affirmative, and the second in the negative; and it so ordered.

*Id.* at 587. *See Totes Inc. v. United States,* 69 F.3d 495 (1995), *Better Home Plastics Corp. v. United States,* 20 CIT 221, 916 F. Supp. 1265 (1996).

When the analysis advanced in *Fink* is applied to the facts now before the Court, Visnex is correctly classified as a viscosity improver under subheading 3811.29.00. Subheading 3902.30.00 provides for all propy-

lene copolymers which would presumably include a propylene monomer and any other monomer that might be chemically bonded to it. Although the parties have not apprised the Court of the potential combinations and concentrations that might come under the purview of this subheading, the Court finds that this grouping is comprehensive and, therefore, a general chemical subheading.

In contrast, subheading 3811.29.00 specifically names viscosity improvers as additives for lubricating oils. Visnex is imported for use exclusively as a viscosity improver for lubricating oil. Although Customs claims that Visnex could be used for a viscosity improver as well as a number of other potential uses, Customs did not provide a single example of another actual use for Visnex. Because Visnex is actually used as a viscosity improver for lubricating oil, subheading 3811.29.00 is the most specific classification.

The incontrovertible fact that Visnex is imported *solely* for use as a viscosity improver for lubricating oil is compelling. Similar to the holding in *Fink*, where the Court found that since muriate of cocaine was "solely used as a medicine, the language of paragraph 74 clearly more definitely applies to it than does the generic provision of 'chemical compounds and salts' found in paragraph 76,"[3] Visnex is solely used as a viscosity improver for lubricating oil. It follows that the language of subheading 3811.29.00, which embraces viscosity improvers which are additives for lubricating oil, "more definitely applies" to Visnex than does the generic provision under subheading 3902.30.00, propylene copolymers. As later courts have found, specific use provisions prevail over competing tariff provisions that have no limits on use or other qualification. *Drankenfeld & Co. v. United States*, 2 Ct. Cust. 512, 515 (1912). See *Totes, Inc. v. United States*, 13 Fed. Cir. (T) ___, 69 F.3d 495, 499 (1995), *United States v. Mobay Chemical Corp.*, 576 F.2d 368, 373, 65 CCPA 53, 59 (1978).

Visnex is composed of equal parts ethylene and propylene monomers. Customs classified Visnex under polymers of propylene but Visnex could have been equally placed under the subheading for polymers of ethylene under heading 3901. In fact, heading 3901 specifically names ethylene-propylene copolymers in the sub-chapter notes: "[heading 3901] also covers ethylene copolymers (for example, ethylene-vinyl acetate copolymers and ethylene-propylene copolymers) in which ethylene is the predominant comonomer." Sub-Chapter I, Section VII, Chapter 39 Notes. The Court finds that the chapter notes provide further support for the resolution that subheading 3902.30.00 is more general than subheading 3811.29.00.

Finally, courts have applied the "more difficult to satisfy" test to determine the more specific of competing tariff provisions. In deciding the correct classification of surge voltage protectors ("SVPs"), the court in *United States v. Siemens*, 68 CCPA 62 (1981), stated that "the provision

---

[3] *Fink v. United States*, 170 U.S. 584, 587 (1898) (citations omitted).

that more specifically describes the SVPs is the item having requirements which are 'more difficult to satisfy.'" *Id*. at 70. (citing *Ozen Sound Devices v. United States*, 67 CCPA 67, 71, 620 F.2d 880, 883 (1980). Subheading 3902.30.00 describes propylene copolymers which presumably encompasses compounds that have a myriad of applications. In contrast, subheading 3811.29.00 describes viscosity improvers used for additives in lubricating oils which embodies a smaller number of compounds since it has requirements that are "more difficult to satisfy." Although this comparison is not quantifiable, the Court finds that because subheading 3811.29.00 has requirements that are "more difficult to satisfy" it furnishes the more specific, and thus, correct classification for Visnex.

III. *Use Provisions vs.* Eo Nomine *Provisions:*

Mitsui asserts the proposition that an article described by both a "use provision and an *eo nomine* provision with equal specificity is more specifically provided for under the use provision." Plt's Br. in Supp. of Mot. for Summ. J. at 38. (citations omitted). The Court finds that this conclusory statement is not universally applicable. In fact, many courts have found that an article covered under an *eo nomine* provision is preferable over use provisions in certain instances. *Totes, Inc. v. United States*, 13 Fed. Cir. (T)___, 69 F.3d 495 (1995), *United States v. Simon Saw & Steel Co.*, 51 CCPA 33 (1964), *Border Brokerage Co., Inc. v. United States*, 65 Ct. Cust. 373 (1970). Preference for classification under a use provision is simply an extension of the overarching rule of specificity. In the seminal case of *United States v. Electrolux Corp.*, 46 CCPA 143 (1959), the issue before the court was the correct classification of electric floor polishers. Customs, the appellant, argued that the use provision "household utensils" prevailed over non-use provisions. The court found that,

> We therefore disagree with appellant, on a review of the cases, that there is any imperative in what it chooses to regard as "firmly established" doctrine of use which requires us to classify electric floor polishers as household utensils in paragraph 339. The rule is no more than an aid to construction and one aspect of the broader rule of relative specificity.

*Id*. at 148. The Court finds that the "doctrine of use" is merely an aid to construction and that the rule of specificity remains at the heart of correct classification.

This logic compels the Court to refocus on the question of whether the use provision implicated here is more specific than the *eo nomine* provision. Mitsui cites *Siemens* for the proposition that a use provision eclipses an *eo nomine* provision. However, *Siemens* held that "in the absence of legislative intent to the contrary, a product described by both a use provision and an *eo nomine* provision is *generally* more specifically provided for under the use provision." *United States v. Siemens*, 68 CCPA 62, 70 (1981) (citations omitted) (emphasis original). Specificity remains the standard upon which competing tariff provisions are to be

judged. In general, a use provision will describe the article with greater specificity and, therefore, provide the correct classification. In the instant case subheading 3811.29.00 describes Visnex most specifically.

## CONCLUSION

For the foregoing reasons, the Court finds that Visnex is correctly classified under HTSUS subheading 3811.29.00.