B. B. T. Corp. of America *v.* United States (No. 3064). United States *v.* B. B. T. Corp. of America (No. 3065[1])

United States Court of Customs Appeals, May 21, 1928

*Walden & Webster* (*Edward F. Jordan* and *Walter F. Welch* of counsel) for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Philip Stein,* special attorney, of counsel), for the United States.

[Oral argument May 8, 1928, by Mr. Welch and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The B. B. T. Corp. of America imported three shipments of goods from France, which are described in the invoices as projecteurs dioptriques. These goods were classified by the collector in each instance under paragraph 228 of the Tariff Act of 1922 as projection lenses and frames for the same. The importer in each instance protested, claiming the goods to be dutiable as incandescent electric-light bulbs and lamps under paragraph 229, or, alternatively, as manufactures of metal under paragraph 399, or as unenumerated manufactured articles under paragraph 1459, or that the lenses, a part of said articles, be separately assessed for duty as lenses under paragraph 226, and the metal parts thereof separately assessable for duty as manufactures of metal under said paragraph 399 of said act. On the hearing before the Customs Court it was stipulated that a hearing might be had on the facts as they appeared in the matter of protest

---

[1] T. D. 42780.

No. 132267–G, and that the other protests might be governed by the decision and facts therein.

From the record and the photograph exhibit introduced in evidence it appears that the particular importations in the matter of said protest No. 132267–G consisted of three complete units, except bulbs, and one bulb to be fitted into one of said units.

The imported articles are intended to be used as flood lights for aviation fields. Each article is shaped like a ship's or lighthouse lantern, and consists of a metal frame containing a socket for the reception of an incandescent electric-light bulb, and a lens. The lens is semicylindrical in general shape and is composed of a central broad convex portion, with 10 parallel lenses above and 10 below such central portion, arranged horizontally and in such manner that the light from a 40-kilowatt bulb within will be cast downward upon the ground, making a brilliant and steady illumination. These articles are adapted to no other use than to light aviation fields, and, so far as the record shows, are used with any ordinary commercial electric current. The light generated from each of these articles is rated at 500,000,000 candlepower, and it is conceded that the articles are in chief value of metal.

The court below sustained the protest as to the electric-light bulb, holding it to be dutiable as claimed under paragraph 229. As to the balance of the importation the articles were held to be entireties, and dutiable as articles in chief value of metal, under said paragraph 399. Both parties appeal from the resulting judgment, the importer alleging as error the failure of the court below to hold the articles dutiable as electric-light lamps under said paragraph 299, and the Government alleging as error its failure to find the goods dutiable as projection lenses and mountings under said paragraph 228.

The relevant paragraphs of the statute, so far as, they are material for the purposes of this opinion, are as follows:

PAR. 226. Lenses of glass or pebble, molded or pressed, or ground and polished to a spherical, cylindrical, or prismatic form, and ground and polished plano or coquill glasses, wholly or partly manufactured, with the edges unground, 40 per centum ad valorem; * * *.

PAR. 228. Azimuth mirrors, sextants, and octants; photographic and projection lenses, opera and field glasses, telescopes, microscopes, and other optical instruments, and frames and mountings for the same; all the foregoing not specially provided for, 45 per centum ad valorem.

PAR. 229. Incandescent electric-light bulbs and lamps, with or without filaments, 20 per centum ad valorem.

Both parties conceded, in the court below, that the single electric-light bulb included in the importation was properly dutiable under said paragraph 229, and the court thereupon entered judgment, as to that article, accordingly. No appeal having been prayed from this portion of the judgment, it will be, therefore, affirmed, without

any opinion by this court as to the dutiability of such bulb, as a part of an entirety, had the point been properly raised.

The balance of the importation, admittedly, constituted three complete units, ready to be fitted with lighting devices, and, as we view it, in the light of the authorities, were properly dutiable as entireties. *Altman* v. *United States*, 13 Ct. Cust. Appls. 315, T. D. 41232; *Sheldon & Co.* v. *United States*, 14 Ct. Cust. Appls. 108 T. D. 41591; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673.

Were the imported articles "incandescent electric-light lamps," as claimed by the importer? We have no commercial proof in this case, and hence must view the matter from the standpoint of the common meaning of the words employed by Congress. The standard lexicographers thus define the words used in the statute:

Webster's New International Dictionary—

*Incandescent.* 2. Pertaining to or designating a lamp whose light is produced by the incandescence of some specially prepared material; as, an *incandescent* bulb; an *incandescent* burner. Most artificial lights are produced by incandescence, for even in a candle flame the light is caused by glowing particles of carbon. But the term is esp. applied to that kind of electric lamp which consists of a filament fixed in an exhausted glass bulb and heated by an electric current, as in the Edison lamp. It is also applied to gas and oil burners of the Welsbach type.

*Incandescent light,* light from a source of incandescence; also, an incandescent lamp, etc.

Funk & Wagnalls New Standard Dictionary—

Incandescent, 2. Of or pertaining to a lamp the light of which is derived from incandescing material such as the filament in an incandescent electric lamp or the mantle in a Welsbach burner. *Incandescent electric lamp,* an enclosed glass globe, exhausted of air, containing a carbon or metallic filament of high resistance and of refractory nature attached to conducting wires passing through and sealed into the glass: invented by Thomas A. Edison in 1879. In practical use, the carbon or metallic filament forms part of a continuous electrical circuit in which the lamp is placed, and because of its resistance to the passage of the electric current the electrical energy is transformed into heat sufficiently great to raise the filament to incandescence, thus causing it to emit light. For convenience and adaptability to commercial use, the conducting wires are soldered to separated metallic parts at the base of the lamp.

Osmium, tantalum, and tungsten are now used in various forms as the principal elements entering into the construction of filaments.

New English Dictionary—

*Incandescent.* d. Applied to that form of electric light produced by the incandescence of a filament or strip of carbon: the *glow-lamp* as distinguished from the *arc light:* Hence extended to various forms of gas and other lamps in which an appliance of a similar nature is used to increase the brightness of the flame.

*Electric light.* a. gen. Light produced by electrical action. b. *spec.* The same as applied to purposes of illumination. It is ordinarily produced either by the incandescence of a filament of metal or carbon, or by the electric arc formed by the passing of electricity between two carbon points.

Century Dictionary—

*Electric lamp*, the contrivance in which the elec. light is produced.—*Electric light*, light produced by electricity; especially, a brilliant light for purposes of illumination obtained by means of a current of electricity, generated by a dynamo-electric machine. The light is of two general kinds, the *arc-light* and the *incandescent light*. In the first the voltaic arc is employed; in the second a resisting conductor is rendered incandescent by the current. The arc-light is produced when a current passes between two carbon electrodes, at first in contact and afterward separated a short distance, the result being the formation of the voltaic arc. The light of the arc and the glowing carbon-points has great intensity, and electric lamps of this kind are extensively used for purposes of illumination, where a powerful light can be economically employed. In order to keep the carbon electrodes at a constant distance, so that the light may be uniform, some form of regulator is generally needed. Commonly an electromagnet is used for this purpose. As the carbons are slowly consumed the distance between them increases; current or voltage changes thereby, and the electromagnet, actuated by the current (series-lamp) or the voltage (shunt-lamp) or both, operates, and thus through some mechanical device causes the points to approach each other. In electric candles this necessity is done away with; here, as in the Jablochkoff candle, for example, the carbon pencils are placed side by side, separated by some insulating earthy substance, the arc is formed at the top, and the candle burns away in a manner analogous to that of an ordinary candle. With these candles alternating currents are employed to obviate the difficulty that would otherwise arise from the more rapid consumption of the carbon forming the positive pole. In an incandescent electric lamp, or glow-lamp, the current is made to pass through a strip of some substance which, because of its high resistance, becomes highly heated, and hence brilliantly incandescent. The substance most commonly used is carbon, which in the form of a thin strip or wire, carefully prepared for the purpose (by squirting from a cellulose solution) and bent in a loop, is inclosed in a bulb of glass from which the air has been exhausted. The vacuum is essential to prevent the consumption of the carbon at the high temperature to which it is raised. The incandescent light is comparable in brilliancy to a good gas-burner, and is hence suitable for general house illumination; it is superior to gas in steadiness, and has the great advantage that it does not vitiate the air. The current employed has, for lamps of ordinary power, much less strength than that needed for the arc-light. Besides carbon, some other substances have been used to a limited extent, as osmium. A considerable use has been made of the Nernst lamp, which uses a short rod of refractory oxids as glower, and does not employ a vacuum, but requires as part of the lamp an electric heater, since the glower becomes conducting only when hot.

From these definitions it fairly appears that an incandescent electric lamp ordinarily consists of a bulb, fitted with other parts, and the whole forming a lamp. The word is thus restricted in its meaning to the light-giving element and its immediate parts, and does not broaden out enough to embrace every item which goes toward holding the light-giving element in place or magnifying its power or directing its beams. The lamp is the source of the light; the other elements are accessory thereto. It will also be likewise observed that a complete electric lamp consists of several parts, of which one part is the bulb; the bulb, together with the other parts, which, the statute states, may be a "filament" or not, constitute a lamp.

This is the very reasonable construction which has been given to this paragraph by the Customs Court. In Abstract 49906, 48 Treas. Dec. 640, miners' "electric safety lamps," containing incandescent electric-light bulbs, were held dutiable as articles in chief value of metal under said paragraph 399, and not under said paragraph 229, as incandescent electric-light lamps.

Again in *Friedlander* v. *United States*, T. D. 41505, 49 Treas. Dec. 704, articles consisting of metal mountings, fitted for use with electricity and claimed to be incandescent electric-light lamps, were held to be dutiable as manufactures of metal under said paragraph 399, the court, among other things, making the very sensible suggestion:

> To concede that these articles are incandescent electric-light lamps within the meaning of paragraph 229 would necessarily require a similar classification for chandeliers, electroliers, and every other fixture which holds an incandescent electric-light lamp.

Another case is Abstract 2033, 51 Treas. Dec. 1088, where Sullivan, J., held marble table or floor lamps, for use in conjunction with electric current, were not dutiable as incandescent electric-light lamps under said paragraph 229, but as manufactures of marble. In this case the justice remarks that a lamp, as intended by said paragraph 229, consists of a "bulb containing gas or exhausted to a vacuum, with or without a filament," and to which he might have added, such other parts as are necessary to hold the same together and in condition for use.

Our conclusion is, therefore, that, within the common meaning of the words employed in the statute, the articles imported here did not constitute incandescent electric-light lamps. In support of this conclusion it is apparent that the Congress, when enacting the paragraph in question, had before it the advisory information furnished by the United States Tariff Commission, which indicates the same viewpoint.

Summary of Tariff Information, 1921, pages 334–335:

> *Description and uses.*—An incandescent electric lamp is a vacuum (or gas-filled) glass bulb containing filaments of some material with high melting point which an electric current will heat to incandescence. According to the nature of the filaments, the lamps are called carbon, metallized carbon, tantalum, and tungsten. The tungsten filament can be operated at a temperature which gives the maximum amount of light in proportion to the electrical energy used, and has practically superseded all the other forms.
>
> *Production.*—Manufacturers of incandescent lamps do not always make the glass bulbs. In 1916 the bulbs were made by five plants, with an estimated production of 20,000,000 per month. The bulbs are blown into iron molds coated with carbonaceous paste. A high polish is effected by rotating the blank in the mold during the blowing. Mechanical processes simulating the hand method of blowing have been devised. Many operations are required to complete the lamp, which, besides the bulb, consists of the base, the filament, the inside stem upon which the filament is mounted, and the leading-in wires. A

number of companies make the finished lamps. In 1914, 74,434,059 tungsten lamps, valued at $11,886,354, and 14,092,055 carbon lamps, valued at $1,397,572, were produced. The production of "Gem, vacuum, and vapor, nitrogen, glower, and tantalum lamps" was valued at $2,363,730 in 1914, decreasing about 12 per cent from 1909. In 1919 the production of all types amounted to $59,372,000, of which by far the greater part was of the tungsten filament type.

Having concluded that the imported articles are not incandescent electric-light lamps, the remaining inquiry relates to the claim made by the Government, namely, are they "projection lenses and frames and mountings for the same?" They are claimed to be such by counsel for the Government because it is argued that light is projected through the lenses of the imported articles upon the ground, thus constituting "projection" lenses and mountings.

We have not been favored with the citation of any authorities which are directly in point upon this proposition. Attention is called to *United States* v. *American Express Co.*, 7 Ct. Cust. Appls. 169, T. D. 36490. There moving-picture machines were involved, and the contest was between the applicability of paragraphs 93 and 94 of the Act of October 3, 1913, providing, respectively, for optical instruments and projection lenses and mountings. The court held them to be projection lenses and mountings. A similar case was *In re Baker-Miller Shipping Co.*, Abstract 41449, 33 Treas. Dec. 606.

The decision of this question is, therefore, also dependent upon the ordinary meaning of the words employed by Congress in the statute. The verb "project" is defined as—

1. To throw or cast forward; to shoot forth. (Webster's New International Dictionary, 1925.)

It can hardly be contended that any lens may be said to project light. It may concentrate, or diverge, or disperse light, but the light passes through the lens, and is not thrown or projected by it. It is different, however, with an image, which may be thrown or projected by a combination of lenses, mirrors, and other parts. It is rather with this meaning, we believe, that the words "projection lenses" were used in the statute. In speaking of instruments, such as the magic lantern and cinematograph, lexicographers commonly speak of the "projection" of images; for example:

Webster's New International Dictionary, 1925—

Cinematograph 1. A machine, combining magic lantern and kinetoscope features, for projecting on a screen a series of pictures, moved rapidly (25 to 50 a second) and intermittently before an objective lens, and producing by persistence of vision the illusion of continuous motion; a moving-picture machine; also, any of several other machines or devices producing moving pictorial effects.

International—

Magic lantern. An optical instrument by means of which magnified images of small transparent pictures can be thrown upon a white wall or screen in a darkened room.

Kinetoscope. An instrument for producing a series of images in such rapid succession that the illusion of actual motion results. The apparatus as usually constructed consists of a projecting lantern with an arc light as its radiant and a fine projecting lens by which the image is formed.

Standard, 1925—

Motion picture. The rapidly changing series of pictures thrown on a screen by a kinetoscope.

The articles imported here do nothing more than to direct the light which passes through their lenses, in a steady flood, in a downward direction. If such a mechanism may be called a projection lens and its frame and mountings, then a street light or a reading lamp, constructed with a lens to direct the light in a certain way, is also a projection lens, with its frame and mountings. The principle of the cinematograph was invented by Edison in 1894. The provision for projection lenses first appeared in paragraph 111 of the Tariff Act of July 24, 1897. It is more than probable that it was so inserted because of this new invention and in an effort to keep the statute in line with the advance in the arts and sciences.

In our opinion the court below was right in holding the articles of importation not to be projection lenses and frames and mountings therefor, but to be manufactures of metal under said paragraph 339. The judgment of the Customs Court is therefore *affirmed*