CHARLES A. REDDEN, HANOVIA CHEMICAL & MANUFACTURING CO. *v.* UNITED STATES (No. 3480)[1]

United States Court of Customs and Patent Appeals, March 7, 1932

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*William Whynman* and *Ralph Folks,* special attorneys, of counsel), for the United States.

T. D. 45574.

[Oral argument February 8, 1932, by Mr. Carter and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise involved in this suit consists of tubular-shaped burners composed of transparent fused quartz made from rock crystal. No sample was filed, but a rough sketch or drawing made by the witness Robinson while testifying appears in the record as an exhibit. This sketch taken with the testimony indicates that each burner consists of a straight tube having two crosspieces, also tubular, on each end. These tubular crosspieces are designed to hold mercury-film phosphorous salts, which are placed therein after importation. As these salts are warmed a mercury vapor is produced, the air is removed from the tube to form a vacuum, and fittings are put on the tubes for mounting them.

In use an electric current is passed through the tube. This causes the mercury salts to vaporize, become incandescent and give off a very bright light. The articles are used chiefly by physicians for irradiating the body with ultra rays, which rays produce artificial "sunburn." Their only use appears to be for therapeutic and prophylactic purposes.

The collector of customs classified the merchandise under paragraph 214 of the Tariff Act of 1922, assessing duty at 30 per centum ad valorem. Said paragraph reads—

PAR. 214. Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

Appellants protested, claiming the merchandise to be properly classifiable under paragraph 229 of said act, which reads—

PAR. 229. Incandescent electric-light bulbs and lamps, with or without filaments, 20 per centum ad valorem.

Upon the hearing the Customs Court overruled the protest and the instant appeal was taken.

In *B. B. T. Corp. of America* v. *United States*, 16 Ct. Cust. Appls. 144, 147, T. D. 42780, this court, after quoting from dictionaries the definition of "incandescent," "electric light," and "electric lamp," in effect, limited the meaning of "electric lamp," for tariff purposes under said paragraph 229, to the bulb and whatever parts the bulb alone might contain.

It was there said—

\* \* \* the bulb, together with the other parts, which, the statute states, may be a "filament" or not, constitute a lamp.

In other words, under the rule there laid down, incandescent electric-light bulbs and incandescent electric-light lamps are, for tariff purposes, both classifiable under said paragraph.

It seems to have been the view of the court below that said paragraph 229 was intended to provide only for bulbs or lamps which are used to produce artificial light for the purpose of only such illumination as is produced for the dispelling of darkness, and definitions are quoted from the Century Dictionary and Cyclopedia and from Funk & Wagnalls' New Standard Dictionary.

It is noted that in each of the definitions as paraphrased or quoted by said court, reference is made to "strip," "filament," or "resistant thread," as an element through which an electric current passes to render such "strip," "filament," or "resistant thread" incandescent and thus produce illumination.

The court also quotes from the Summary of Tariff Information, 1921, furnished to the United States Senate for use during the consideration by that body of the bill which eventuated in the Tariff Act of 1922, after said bill had passed the House of Representatives, as follows:

#### INCANDESCENT ELECTRIC LAMPS

*Description and uses.*—-An incandescent electric lamp is a vacuum (or gas filled) glass bulb containing filaments of some material with high melting point which an electric current will heat to incandescence. According to the nature of the filaments, the lamps are called carbon, metallized carbon, tantalum, and tungsten. The tungsten filament can be operated at a temperature which gives the maximum amount of light in proportion to the electrical energy used, and has practically superseded all the other forms.

 *  *  *  *  *  *  *

*Important changes in classification.*—Electric bulbs and lamps have been removed from paragraph 95, act of 1913, including other manufactures of glass, and are provided for in a separate paragraph.

It may be stated that the first paragraph of the foregoing statement was likewise before the House of Representatives in the 1920 summary while that body was considering the bill. After the foregoing quotation the court says—

It is obvious that the common meaning of the term "incandescent electric-light bulbs and lamps, with or without filaments," does not include therein the quartz-glass tubes in question herein.

The court pointed out that under the definitions quoted by it—

* * * the commonly accepted use of merchandise snch as is described in paragraph 229, *supra,* is for purposes of illumination.

It further points out that no attempt was made to show that the involved merchandise—

* * * was known in the wholesale trade and commerce of the United States as incandescent electric-light bulbs and lamps.

The insistence of appellants is that the articles involved fall squarely within said paragraph 229. We quote from their brief:

* * * the lamps conform to the qualifications required by the statute as conditions of classification. They are incandescent lamps because the light is given by incandescence. They are electric-light lamps because they give light and because the source of the light is the electric current. They are lamps because they are the light-giving element. It is entirely immaterial that they are not constructed exactly the same as the original incandescent electric-light lamp. They are dutiable under the provision because they conform to the qualifications named by the statute.

It should be borne in mind that illumination results from the use of the article, but such illumination is not for the same purpose as the illumination which comes from the ordinary electric-light lamp.

It seems, therefore, that the articles, as argued by counsel for appellants, do "conform," in express terms, "to the qualifications named by the statute," and that they are classifiable thereunder unless we are required to look to the purpose of the light produced by them and limit the meaning of illumination to that which is produced simply for dispelling darkness.

It is true that these tubes have no metallic filaments. In use the mercury vapor supplies the resistant element through which the current passes to produce the rays of light used, and the paragraph expressly states "with or *without* filaments." (Italics ours.)

It may be here said that much of appellants' brief seems to proceed upon the theory that these articles were not being manufactured at the time of the passage of the Tariff Act of 1922, but the evidence in the case does not justify such an assumption. On the contrary, appellants' witness, Mr. Robinson, stated that the violet ray had been in use "since 1903" and that he had been dealing in merchandise like that involved "since 1912."

As we view it, however, this proof really tends to strengthen appellants' theory that the articles involved were in the mind of Congress at the time of the framing of the act and are included in the paragraph under which appellants claim.

It is observed that in the quotation from the Summary of Tariff Information, *supra*, gas-filled bulbs are specifically mentioned. These articles meet that description. True, neither the gas nor the mercury salts from which the gas or vapor is produced was in the tubes when the latter were imported, but this feature seems to be covered by the language of the paragraph, "without filaments."

It is also true that the said Summary of Tariff Information says, "An incandescent electric lamp is a * * * glass bulb," but the sentence continues, "containing filaments." In other words, according to the description there given, an article is not an incandescent electric lamp unless it be a glass bulb containing filaments of some material therein specified.

Congress, however, did not use the word "glass" in the paragraph and it expressly said, "with or without filaments." Also, electric-light bulbs and lamps were removed from the paragraph of the act of 1913, which included them along with "other manufactures of glass," and placed in a separate paragraph in the Tariff Act of 1922.

Appellants' brief quotes from the supplement to the Century Dictionary the following definition of mercury lamp:

A lamp the light of which is derived from an electric discharge through mercury vapor *in vacuo*. In its original form the mercury lamp was designed by Professor Arons of Berlin (1892).

The said authority, after describing in detail various forms of mercury lamps and their different uses, says of the quartz tube—

\* \* \* This lamp, on account of the greater transparency for ultra-voilet rays of the quartz tube, is especially valuable in certain lines of work in which an intense ultra-violet spectrum is demanded.

Machinery's Encyclopedia says of the particular quartz-tube lamp, therein referred to, that it is—

A special type of mercury vapor lamp \* \* \*. In this type, a quartz tube is used instead of a glass tube, as in the regular Cooper-Hewitt lamp, because the former tube will stand a much higher temperature and pressure than a glass tube. The dimensions of the tube are also less than in the regular mercury vapor lamp, the length being only about 3 inches.

From the full description, of which the above is a part, we assume that the particular quartz-tube lamp therein referred to is one whose purpose is mechanical or industrial, rather than therapeutic or pro-phylactic, but those used for the latter purpose have, apparently, very much the same characteristics and qualities as those used for the former purpose.

In *United States* v. *R. F. Downing & Co.*, 17 C. C. P. A. (Customs) 194, 197, T. D. 43645, we held that certain jewelers' tweezers were in-cluded *eo nomine* in paragraph 354 of the Tariff Act of 1922 and that said paragraph was not limited to tweezers used for manicuring or pedicuring purposes, although named along with articles apparently devoted to such uses.

We there said—

We can not legislate. If the Congress meant to restrict the meaning of the word "tweezers" in said paragraph 354, it might easily have done so. It is sig-nificant that in the other articles enumerated it did so; for instance, *cuticle* knives, *corn* knives, *nail* files, *hand* forceps. It did not say *hand* tweezers or *manicure* or *pedicure* tweezers, but simply "tweezers." This includes all tweezers, except such as are more specifically described as surgical instruments, or otherwise, and prevents the greater portion of such instruments from being relegated to the basket clause of manufactures of metal.

It seems to us that here it may be said, as was said of the tweezers there involved, if the Congress meant to restrict the meaning of elec-

tric-light bulbs to such as are in common use for ordinary illumination it might easily have done so.

In its decision the court below cited *Forbes Radio Co.* v. *United States*, Abstract 2354, wherein radio bulbs or tubes were held by said court not to be included in said paragraph, saying—

\* \* \* It being shown that the radio bulbs were neither known nor recognized in the wholesale trade and commerce of this country as incandescent electric-light bulbs or lamps, but rather as radio or vacuum tubes, they were held dutiable as assessed by the collector [under paragraph 399, Tariff Act of 1922].

The record in said case is not before us, but it is assumed from the use of the words, "it being shown," that affirmative proof was there made as to the designation of the bulbs involved, in trade and commerce, and that from the record the trial court was convinced that the bulbs at issue were not used for giving light at all, but for developing heat or some other purpose.

Such proof would clearly distinguish the articles there passed upon from those here at issue. The latter articles meet the plain words of paragraph 229, and, in our opinion, said paragraph is more specific than paragraph 214.

The judgment of the court below sustaining the collector's classification is *reversed* and the cause is *remanded* for further proceedings not inconsistent herewith.

BLAND and LENROOT, Judges, dissent.