The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* JOHN H. FAUNCE (INC.) ET AL. (No. 3602)[1]

United States Court of Customs and Patent Appeals, May 1, 1933

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*William L. Wemple* for appellee.

[Oral argument April 5, 1933, by Mr. Folks and Mr. Wemple]

[1] T. D. 46395.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise involved in this appeal from the judgment of the United States Customs Court is represented by Exhibit 1 and Illustrative Exhibit A which are claimed to be lenses, and when assembled are of two types, "bull's eye" and "drum," and called Fresnel lenses.

Exhibit 1 is a dioptric lens segment for a 500-millimeter lighthouse lens, and consists of one-half (180°) of a ring about 20 inches in diameter. A cross section of the glass forming the half-circle segment is triangular in shape with sides about 1⅜ inches wide. It is in the form of a triangular prism, bent into a half circle.

Illustrative Exhibit A is referred to as an "O" ring and is a ring of heavy glass, flat on the inside of the circle and convex on the periphery, about 8½ inches in diameter, 2¾ inches wide, and about ¾ of an inch thick at its thickest point. It is, according to the testimony, regarded as a pair of lenses—that is to say, if split in two horizontally, a pair of lenses would result.

Introduced in evidence also is Illustrative Exhibit B, which is an "assembled lens, consisting of the 'O' segment and the prismatic ring segments, similar to those covered by the invoice," and is referred to as the "drum" type.

Illustrative Exhibit C is an assembled "bull's eye" type of lens. Around, and in close contact with, a centrally located spherical plano lens (which is a single piece of glass) are placed three rings such as would result from using three pairs of 180° prismatic segments like Exhibit 1. These are bound together with metal and form an assembled lens, or, more precisely speaking, an assembly of lenses.

The drum type, Illustrative Exhibit B, is made up of an assembly of five glass units bound with metal. The appearance of the assembled exhibit indicates that some cement is used between the metal and the glass. These assemblies are made in different sizes of different sized parts. The middle unit is the aforementioned "O" ring. Above and below the "O" ring are placed two dioptric rings such as would result from forming a pair of rings by using four 180° segments like Exhibit 1. The metal for assembly is obtained in this country, and the two types of assembled lenses are assembled in the United States. The type of mounting employed in the assembly is referred to in the record as astragal mounting. The edges of the lenses are ground or bevelled.

According to one of the witnesses the lenses represented by Illustrative Exhibit A are manufactured as follows.

These lenses start with a chunk of glass somewhat larger in all its dimensions than this particular piece. A mechanic then takes that glass and roughly brings it to its present form with a hammer and chisel, just as a sculptor would work, until he has brought it to approximately its present form. It is then put on a device like a potter's wheel, which is revolving round and round; and a tool is brought to bear on the edge. That tool has itself an abrasive and has roughly this contour. This is with that tool roughly ground to take this shape. Then the ring is mounted from the outside, and there is a similar process with respect to grinding the inside of the lens. That is repeated probably four times in each operation, the degree of perfection being a little greater. Finally its final shape and form is obtained in the last grinding operation. The lens is then polished by using a rouge, or a very fine abrasive. As a result of this polishing we have it in this form here (indicating Illustrative Exhibit A).

The testimony in the case, concerning the use of the Fresnel lens, is thoroughly and accurately discussed in the opinion of the court below, by Judge Sullivan, and no useful purpose could be served by repeating here what is so well stated there. Both types of assemblies, according to the testimony, are used chiefly in lighthouses. In some instances they are used as course lights in aviation. Neither of them is used for the purpose of illuminating or lighting up any object which is to be seen by the reflected light from the lamp. They are used for the purpose of aiding seamen in determining the location of their ships with respect to the shore or dangerous shoals or the like, and to mark the course for aviators and inform them of the location of landing places. There is some testimony about a flood-light use of the same on aviation fields, but we think this testimony may, under the circumstances at bar, be disregarded by us. A 15-candlepower light, under favorable conditions and at a proper altitude, when placed behind the Fresnel lenses, may be seen for 10 or 12 miles at sea.

While the entered value of the different items of the imported merchandise varies according to size, the value of one of the lens segments, 180° for 500-millimeter lighthouse, is set out on the invoice as $20.

There is much testimony in the record as to the scientific or technical operation of the lenses. It is conceded by all that the rays of light coming from the lamp, when they hit the lens at an angle, are refracted or turned and are projected in a line parallel with the axis of the assembly. The several parts of the assembly are designed to throw a great number of light rays in a parallel column. The Fresnel lens is not new to commerce. See Encyclopædia Britannica, eleventh edition, published in 1910, where the Fresnel lens is discussed somewhat at length.

The merchandise was classified for duty by the collector pursuant to an order from the Treasury Department, T. D. 43858, issued

February 14, 1930, relating to paragraph 218, Tariff Act of 1922, which provided in part for—

illuminating articles of every description, * * * for use in connection with artificial illumination, * * * finished or unfinished, composed wholly or in chief value of glass * * *.

It appears that the Treasury decision referred to, which is a letter from the Commissioner of Customs to the collector of customs at New York, was issued for the purpose of requiring a change in classification of this kind of merchandise, due to the decision of the United States Customs Court in T. D. 42501, which was affirmed by this court in *B. B. T. Corp. of America* v. *United States*, 16 Ct. Cust. Appls. 144, T. D. 42780. The decision in the lower court in T. D. 42501, in describing the lamps used for the illumination of flying fields, stated that the instrument in question had no optical qualities whatever and that its purpose is to distribute light upon a field for the benefit of aeronauts.

The importers protested the classification and claimed under a number of paragraphs, but in the court below, and here, have confined their contention to the single claim that the merchandise is properly dutiable under paragraph 226 for lenses, which paragraph reads as follows:

PAR. 226. Lenses of glass or pebble, molded or pressed, or ground and polished to a spherical, cylindrical, or prismatic form, and ground and polished plano or coquille glasses, wholly or partly manufactured, with the edges unground, 40 per centum ad valorem; with the edges ground or beveled, 10 cents per dozen pairs and 35 per centum ad valorem; strips of glass not more than three inches wide, ground or polished on one or both sides to a cylindrical or prismatic form, including those used in the construction of gauges, and glass slides for magic lanterns, 35 per centum ad valorem.

Paragraph 218 (c) of said Tariff Act of 1930 follows:

PAR. 218 (c). Illuminating articles of every description, finished or unfinished, wholly or in chief value of glass, for use in connection with artificial illumination: Prisms, glass chandeliers, and articles in chief value of prisms, 60 per centum ad valorem; chimneys, 55 per centum ad valorem; globes and shades, 70 per centum ad valorem; all others, 60 per centum ad valorem: *Provided*, That parts not specially provided for, wholly or in chief value of glass, of any of the foregoing shall be subject to the same rate of duty as the articles of which they are parts.

The United States Customs Court sustained the protest and held the merchandise dutiable as lenses under said paragraph 226. The Government has appealed from the judgment of the court below. In its decision, the court indicates that it does not believe the importation is an illuminating article used in connection with artificial illumination and provided for in paragraph 218 (c), but holds that, even if it is enumerated therein, it falls under the *eo nomine* provision for lenses and should be there classified. The court said:

* * * The witnesses are unanimous in terming this merchandise lenses used for a specific purpose. The authorities are so numerous and unanimous in

holding an *eo nomine* provision more specific than a general provision, and this rule of law is so well known, that it is unnecessary to cite cases.

The court further said:

We need not go into the history of tariff legislation on lenses, but, until the issuance of T. D. 43858, *supra*, by the commissioner of customs, it had been the policy of the appraising department to classify this merchandise under tariff provisions for lenses, and this court, then known as the Board of General Appraisers, in *Knauth, Nachod & Kuhne's* case, 12 Treas. Dec. 415, held that Fresnel lenses, composed of a number of ringlike sections, each section in itself a lens, shaped by grinding and polishing, with unground edges, were dutiable at 45 per centum ad valorem under paragraph 109 of the Tariff Act of 1897 as lenses, rather than under the general provision in paragraph 100 of that act for articles of glass, cut, ground, etc. Paragraph 109 of the act of 1897 was similar in wording to paragraph 226 of the present act.

The Government does not seriously contend that the merchandise does not consist of lenses. It states that Congress did not intend to include such merchandise as is at bar in the lens paragraph along with lenses used in spectacles and eyeglasses or in optical instruments. The Government urges that under our holding in the case of *Solomon & Son* v. *United States*, 13 Ct. Cust. Appls. 353, T. D. 41256, the merchandise is clearly an illuminating article, used in connection with artificial illumination, and that, even if it may be classed as lenses, it is, nevertheless, under the controlling effect of said decision, dutiable as an illuminating article.

In the *Solomon* case, *supra*, this court had under consideration pieces of glass, faceted, flat on one side, convex on the other, some red, some green, and some uncolored, used chiefly for automobile lamps. They were so located on the lamps as to cause the rays of light emanating from an electric bulb to pass through them. The light on the automobile was not used primarily for the purpose of illuminating any surrounding object, but the light served the purpose of calling attention to the location of the automobile. The competing provision was for "imitation precious stones, cut or faceted." The court said:

If the articles in question come within the general provision for "imitation precious stones, cut or faceted," which is not limited as to use, and also within the provision for "illuminating articles of every description," which is specially limited to a particular use, the designation according to a specific use must prevail over the general description without limitation as to use. *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124, T. D. 37979, and cases therein cited.

The Government contends here that the involved lenses served the same purpose as the imitation precious stones served in the *Solomon* case, *supra*, and that even if the merchandise involved is lenses, the above-quoted ruling of the *Solomon* case would require classification as illuminating articles, since this is designation by use.

We are not unmindful of the importance, in tariff classification, that the courts have given to a provision calling for a classification in

accordance with its use. The Supreme Court of the United States in *Magone* v. *Heller*, 150 U. S. 70, held sulphate of potash to be dutiable under the provision for "all substances expressly used for manure" rather than under the provision for "sulphate of potash." It there said:

So, by force of the very clause in question, "all substances expressly used for manure," must be exempt from duty, even if they are chemical products, and are scientifically classed as one kind of an article the name of which appears in Schedule A, or are spoken of in commerce by that name. The agricultural use must prevail over the scientific or commercial nomenclature.

In *Chew Hing Lung* v. *Wise*, 176 U. S. 156, the court approved the principle laid down in *Magone* v. *Heller*, *supra*, and distinguished the facts in that case from the facts then before it. The principle in the *Magone* v. *Heller* case was followed in various other decisions by the Supreme Court of the United States, and in quite a number of decisions by this court, notably in *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124, T. D. 37979; *United States* v. *Hillier's Son Co.*, 14 Ct. Cust. Appls. 216, T. D. 41706; *United States* v. *Lo Curto & Funk*, 17 C. C. P. A. (Customs) 19, T. D. 43319.

In these cases a provision for classification which involved the use to which the article was to be put was in competition with other paragraphs in which the merchandise was named, and the courts held that the use provision was more specific than the competing provision, and by reason of this fact gave relative specificity controlling effect. In classification cases it is sometimes difficult to determine the legislative intent, and the rule of relative specificity is one frequently resorted to by the courts in arriving at such intent. A designation by use has, in numerous well-considered authorities, been regarded as more specific than other provisions by name. In some of the cases above referred to the controlling influence given to the designations by use therein considered seems to be prompted by the conclusion that the provisions carry with them a strong indication that the legislature, in definitely specifying the use of the article, intended to draw into such provisions many materials named elsewhere because it was thought that the legislature regarded use as of paramount importance.

The phrase "illuminating articles" may have a suggestion of use, but the legislature was not satisfied with this designation alone and further provided "used in connection with artificial illumination," which made it a very particularly described use. We think this provision should be regarded as quite specific when applied to any article which comes clearly within its scope, when the whole context of the same is considered. This fact, however, is no warrant for invading certain other specific paragraphs and drawing into the illuminating glassware paragraph articles which are only technically provided for therein, if provided for at all.

The context of certain other paragraphs, where illuminating articles are specifically enumerated, when considered with paragraph 218 (c), supports the conclusion that Congress never intended that the articles therein provided for at rates of duty different from paragraph 218 (c) should be drawn into the latter. For instance, paragraph 229 of the Tariff Act of 1930 provides for incandescent electric-light bulbs and lamps with and without filaments at 20 per centum ad valorem, and if the filaments are of a certain material, 30 per centum ad valorem. It might be argued, if the Government's contention is here sustained, that by reason of the designation by use in paragraph 218 (c), and under the decisions above discussed, paragraph 229 would be invaded, and incandescent-light bulbs, if in chief value of glass, which clearly are illuminating articles and are used in connection with artificial illumination, should be classified under paragraph 218 (c), *supra*. This conclusion would result in eliminating the incandescent-light paragraph from the act and in attributing to the legislature the doing of a purposeless act in enacting such a provision.

While discussing this phase of the case, we think it not improper to suggest that we have found no case where it has been held that a designation by use will invade a provision where an article having but one use is specifically named.

Projection lenses reflect and project rays of light, and it might be argued with considerable plausibility that they are used in connection with artificial illumination, and that, therefore, they should be classified as illuminating articles. If the Government's contention is to be sustained, all lenses described in paragraph 226 which throw the rays from artificial light would be taken out of the specific provision for "lenses of glass." We can not think that this result was intended by the legislature.

We are of the opinion that the court below was right in holding that the imported merchandise was lenses such as Congress provided for in paragraph 226, *supra*. It is not necessary for us to pass upon the question as to whether or not it is, or is not, described in paragraph 218 (c). It is our judgment that if it is therein described, it is not described with sufficient specificity, nor under such circumstances as to require that it should be classified thereunder.

We have looked through the legislative history cited by the Government, both in connection with the lens paragraph and the illuminating-glassware paragraph, and we find nothing which supports, to any extent, its contention that such history indicates a legislative intent that the involved merchandise should be classified as illuminating articles. On the contrary, if the legislative history suggests any legislative intent whatever, pertinent to the issue at bar, it is to the opposite effect.

It is pointed out by the Government that it results in incongruity to classify these complex and expensive lenses with spectacle glasses, especially in view of the fact that the claimed provision in the lens paragraph calls for a duty of *10 cents per dozen pairs* and 35 per centum ad valorem. It might be suggested that the same is true of a great many other kinds of lenses which clearly belong in that paragraph. In this connection it might also be proper to remark that it would be somewhat anomalous to classify such merchandise as is at bar along with lamp chimneys under paragraph 218 (c).

The judgment of the United States Customs Court is *affirmed*.