(C. D. 996)

Smith Chemical & Color Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided April 10, 1946)

*Strauss & Hedges; Barnes, Richardson & Colburn* (*Joseph Schwartz*, of counsel), for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*John J. McDermott* and *Richard F. Weeks*, special attorneys), for the defendant.

Before Oliver, Cole, and Mollison, Judges

Mollison, Judge: The plaintiff in this case imported into the port of New York 33 casks, containing some 11,000 pounds, of a substance described on the invoice as "Powdered Green Earth." It was assessed with duty by the collector at the rate of 25 per centum ad valorem under the provisions of paragraph 66 of the Tariff Act of 1930, which reads as follows:

Par. 66. Pigments, colors, stains, and paints, including enamel paints, whether dry, mixed, or ground in or mixed with water, oil, or solutions other than oil, not specially provided for * * *

The instant suit was filed to recover a portion of the duties assessed, it being claimed that the merchandise is entitled to classification under the provision in paragraph 207 of the same act for—

Clays or earths * * * wrought or manufactured, not specially provided for, $2 per ton * * *

It seems to be clear from the record that the merchandise at bar is an earth, known interchangeably as "green earth" and as "terre verte," and that it has been wrought, i. e., does not contain extraneous material and is in a fine state. However, it also appears from the record that it is well recognized as a pigment used in the manufacture of artists' colors.

According to the record, it is not used as a *pigment* for coloring cement or for making house paint for the reason that in the quantities in which pigments for those purposes are ordinarily used it would have little or no coloring value, but it is used as a *filler* in cement colors for three reasons: (1) To reduce the pigment value of the actual pigment used (chrome oxide); (2) to reduce the cost of the said pigment; and (3) for its limeproof and alkaliproof qualities, i. e., because it withstands the lime action of the cement.

Webster's New International Dictionary (2d Ed.), 1945, defines "terre verte" as—

Glauconite, or the similar mineral celadonite, used as a green pigment by artists.

and numerous authorities, such as The Condensed Chemical Dictionary (3d Ed.), Thorpe's Dictionary of Applied Chemistry (4th Ed.), and the Encyclopaedia Britannica (14th Ed.), identify green earth or terre verte as a pigment.

In volume 17 of the latter at page 67 under the caption "Paints, Chemistry of," it is said:

\* \* \* *Green Earth* is a natural alkali-aluminum-magnesium-ferrous silicate of variable composition. It is an inert and permanent pigment deficient in colour and is used as an artists' oil and water colour, in fresco painting, and as a substratum for organic lakes, basic dyes, fixed by its silicic acid content, being in some cases rendered fast to light.

In the brief filed on behalf of the plaintiff it is said that the testimony offered on behalf of the defendant fails to show that the terre verte used by artists is of the same composition as the green earth involved in this case, and that even if it be conceded to be the same, the use of green earth as a pigment is very limited when compared with its other nonpigment uses. It appears from the record, however, that the merchandise at bar was clearly identified as green earth or terre verte such as is used in the manufacture of artists' colors, and we find nothing to indicate a preponderance in use of such merchandise either for pigment or nonpigment purposes.

A further argument offered by plaintiff is based upon a quotation from the Summary of Tariff Information, 1929, wherein at page 324, giving the description and uses of the pigments covered by the im-

mediate predecessor of paragraph 66, *supra*, in which the identical language was used, the Tariff Commission said:

* * * It is essential that the pigment be insoluble in the vehicle and opaque, since these properties determine the body and covering power of the paint. * * *

It is pointed out that one of defendant's witnesses named Dyson testified as follows:

Green earth has been used for 500 years as a very weak but very permanent and very transparent green suitable for glazing. In other words, it is transparent enough to put over other colors and until the invention of iridium only about 100 years ago that was the only transparent green we had, and it is still used for that purpose.

We find no merit in the argument that the pigments provided for in paragraph 66 "are not transparent but opaque," for we think that the terms "transparent" and "opaque" were both used in a relative rather than an absolute sense. It is clear from Mr. Dyson's testimony that transparency is a desirable feature in certain artists' colors, which are nonetheless pigments.

Plaintiff's main argument is that the customs classification of powdered green earth has been fixed by decisions of this court under previous tariff acts as "clays or earths, wrought or manufactured, not specially provided for," citing the cases of *A. B. Ansbacher & Co.* v. *United States*, 9 Treas. Dec. 944, T. D. 26416 (G. A. 6057), and *J. W. Coulston & Co.* v. *United States*, 26 Treas. Dec. 348, Abstract 34919, to which may be added the case of *Kuttroff, Pickhardt & Co.* v. *United States*, 47 Treas. Dec. 1039, Abstract 49249.

The *Ansbacher* case, which was the authority for the other two decisions, arose under the Tariff Act of 1897. There the competition between tariff provisions was essentially the same as in the case at bar, viz, a provision for pigments, not specially provided for, as against wrought or manufactured earths, not specially provided for.

The testimony offered on behalf of plaintiff in that case, as shown by the opinion, was to the effect that the green earth involved was not a pigment, but a substratum upon which, after importation, were precipitated certain dyes which gave the green earth the brilliancy in shade and color which made it suitable for use as a paint having limeproof properties. Note the similarity between this statement and the last portion of the Encyclopaedia Britannica excerpt quoted above.

We think, however, it may fairly be said that the record in this case presents a different situation in that it establishes that green earth such as that involved has two uses; first, for its color properties as a pigment in the manufacture of artists' colors; and second, for its limeproof properties in the manufacture of paints and as a filler in cement colors.

The provision in paragraph 66, *supra*, for pigments is a designation by use, and as such is more specific than the general designation by composition in paragraph 207 under which the plaintiff claims. Classification of the merchandise under paragraph 66 by the collector carried with it a finding that the chief use thereof was as a pigment, under the well-settled rule that to entitle a commodity to classification by use the test is as to its chief use.

As has been said, we can formulate no opinion from the record as made as to which of the uses of the merchandise at bar, pigment or nonpigment, is the chief use. We therefore overrule the protest claim, and judgment will issue accordingly.