No. 57433.—Paispearl Products, Inc. *v.* United States, protest 172550–K (New York).

MOLLISON, Judge: The plaintiff in this case imported through the port of New York from Norway some 69 pounds of a substance described on the invoice

as "pearl essence." It was assessed with duty by the collector at the rate of 25 percent ad valorem under the provision for pigments in paragraph 66 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. Various claims are made in the protest and by timely amendment thereof, but the claims pressed, in the order in which they are relied upon, are as follows: For free entry under the provision in paragraph 1677 for "Fish imported to be used for purposes other than human consumption"; for duty at the rate of 12½ percent ad valorem under the provision in paragraph 66, as modified, *supra*, for "Colors, stains, and paints"; or for duty at the rate of 5 percent ad valorem under the provision in paragraph 1558, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for "raw or unmanufactured articles not enumerated or provided for (except frogs and frog legs)."

There is no dispute as to what the merchandise consists of, and how it came into the condition in which it was imported. The merchandise was identified as the silvery material or essence found on fish scales, herring scales in particular. The scales were removed from the fish and placed in barrel churns. Water and a detergent were added, which together with the action of the churn, washed the silvery material or essence from the scales. The aqueous solution containing the essence was then drained and extracted from the scales after which it was placed in a centrifuge and the water extracted. A chemical known as Santabrite and a 1 percent ammonia water solution were added as preservatives. In its imported form, the merchandise is a paste, which, as shown by plaintiff's exhibit 1, received in evidence as representative of the imported merchandise, is of a dull-silver color with some black specks therein.

Upon the plaintiff rested the twofold burden of establishing the incorrectness of the collector's classification, and the correctness of one of its claimed classifications. In assuming the first part of this burden, plaintiff contends that the pearl essence at bar is not a pigment because (1) it is not in dry form; (2) it is not in powdered form; (3) it does not have hiding or covering qualities; (4) it is not used or suitable for use in its imported condition; and (5) in its imported condition, it is not stable and decomposes.

In support of the first two contentions concerning the form of the imported product, plaintiff relies upon testimony offered at the trial not only by one of its own witnesses but also by one witness for the defendant, upon a dictionary definition of the term "pigment," and upon a decision of this court cited as judicial precedent.

The testimony referred to was given by two chemists and was to the effect that the pigments with which they were familiar were all in powdered form.

The dictionary definition is found in Webster's New International Dictionary, 2d edition, 1935, as follows:

**1.** A coloring matter, or a substance that imparts a color (including black or white) to other materials (except by dyeing; cf. DYE).

**2.** Any powder or easily powdered substance which is mixed with a suitable liquid, in which it is relatively insoluble, to form paints, enamels, etc.

The decision relied upon as judicial precedent is that in the case of *A. B. Ansbacher & Co. et al.* v. *United States*, 9 Treas. Dec. 944, T. D. 26416, involving the classification status of a ground earth of grayish-green tint, known as "green earth." We observe that the question of whether or not the green earth there involved was or was not a pigment was not determined in any way upon the basis of its being in dry or powdered form. As a matter of fact, it would appear that the substance was actually in dry form, but was, nevertheless, held not to be a pigment for other reasons.

The quoted dictionary definition, it will be noted, contains in its first meaning a rather broad signification, which quite conceivably would encompass the merchandise at bar.

As to the testimony given by the witnesses, it must be remembered that the question at issue is the common meaning of the tariff term "pigments," which is a question of law. The testimony of the witnesses is, therefore, received as an aid to the court's understanding of the term, and is not binding, particularly in view of the fact that Congress, in enacting the various provisions for pigments in the tariff act, has indicated a legislative understanding of the term which includes pigments in other than dry or powdered form.

Thus, in the paragraph under which the collector's classification was made, provision is made for pigments "whether dry, mixed, or ground in or mixed with water, oil, or solutions other than oil." Note also the provisions in other paragraphs of the same schedule, namely, paragraphs 68, 71, and 72, which provide for pigments in forms, other than dry or powdered.

Although it was established at the trial that the merchandise in issue is not in the dry or powdered form, it was not established that it was not in any of the other forms provided for pigments in paragraph 66. We are, therefore, satisfied that plaintiff's contentions with respect to the form of the merchandise are without merit.

Turning, therefore, to the plaintiff's contention with respect to the lack of hiding or covering qualities of the merchandise at bar, we find that the record does not quite support the contention. Plaintiff's witness Joachim testified that "this has very limited hiding," but he did state that it could be used to color a paint. Plaintiff's witness Brand, superintendent of the plaintiff corporation, testified that, when purified, and mixed with proper solvents, pearl essence was used for spraying or dipping operations on buttons, beads, artificial flowers, and in plastics, and that the concentration in which it was supplied to the customers depended upon the use to which it was to be put.

Defendant's witness Greenstein stated that pearl essence imparts "the quality we call pearliness" and is used as pigments are used.

It would appear from the foregoing that pearl essence is not totally lacking in hiding or covering qualities, assuming that these are requisites of pigments, and that the degree in which it possesses those qualities depends in some measure upon the concentration in which it is used. No objective standard of such qualities was referred to or suggested, and we conclude that on the record as made the plaintiff has failed to establish that the pearl essence at bar is not a pigment for lack of hiding or covering qualities.

Plaintiff's fourth and fifth contentions relate to the fact that in its imported condition the pearl essence at bar is not suitable for use in its imported condition, and that in that condition it is unstable.

The provision for pigments in paragraph 66, *supra*, is a designation by use. *Drakenfeld & Co.* v. *United States*, 2 Ct. Cust. Appls. 512, T. D. 32248, and *Smith Chemical & Color Co., Inc.* v. *United States*, 16 Cust. Ct. 118, C. D. 996. While the general rule is that the classification status of imported merchandise is determined by the condition in which imported, and it is clear that in its imported condition merchandise such as that at bar could not be used as a pigment, nevertheless, in the case where the classification is controlled by use, when it is shown that the imported merchandise is suitable for the use indicated in the statutory provision, and had been so far advanced as to be devoted to that use, the fact that some processing preparatory to that use is required does not bar classification under the use provision. In *United States* v. *Baxter et al.*, 9 Ct. Cust Appls. 99, T. D. 37975, certain round, cedar poles of a character adapted to being used as telephone, trolley, electric-light, or telegraph poles, but which in their imported condition were required to be drawshaved, painted, notched, squared, creosoted, and roofed before they might be used for the specified purposes, were, nevertheless, held to be properly classified under a tariff provision for "telephone, trolley, electric-light, and telegraph poles."

So in the case at bar. The record shows that the processes necessary to fit the imported product for use as a pigment are purification or refining processes, and that those characteristics which confer upon the imported product its use as a pigment are present upon importation.

In our view, therefore, the plaintiff has failed to establish that the merchandise at bar is not a pigment, as classified by the collector.

We do not believe that any of the claimed classifications relied upon by the plaintiff can be considered to be applicable to merchandise such as that at bar, or, if applicable, are more specific than the classification as pigments under paragraph 66. The claim under paragraph 1677 providing for "Fish imported to be used for purposes other than human consumption" we believe to be untenable for the reason that the merchandise at bar is not within the term "fish," as used therein.

In the case of United States v. Edward I. Petow & Son, 34 C. C. P. A. (Customs) 55, C. A. D. 343, in a rather exhaustive summation of the scope of paragraph 1677, our appellate court indicated that the provision covered, besides whole fish, fish offal when imported to be used for purposes other than human consumption. That case, specifically, involved merchandise described as "sea water, fish scales, seaweeds, parts of fish, and accompanying offals," the desired ingredient being the scales from a type of fresh sea herring, which scales were used, after importation, in recovering guanine, which is used in the production of pearl essence.

It can hardly be said that the product here involved, the crude pearl essence, is either fish or fish offal. It is the product of such offal, but is not the offal itself.

The provisions of paragraph 66 for "colors," "stains," and "paints" apparently refer to merchandise in a further state of advancement than pigments, being, according to the record, products containing a pigment or color and a vehicle in which the pigment is suspended or dispersed. They are, therefore, not applicable to the merchandise here at bar.

Lastly, the general catch-all provision in paragraph 1558 is not applicable for the reason that the merchandise is otherwise enumerated or provided for in paragraph 66 as a pigment.

The protest claims are overruled, and judgment will issue accordingly.